MANATT, PHELPS & PHILLIPS, LLP
CHRISTINE M. REILLY (Bar No. CA 226388)
E-mail:  CReilly@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:      (310) 312-4000
Facsimile:      (310) 312-4224

Attorneys for Defendant
Wingmen V, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARCHE MEEKS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BUFFALO WILD WINGS, INC., a Minnesota corporation; BLAZIN WINGS, INC., a Minnesota corporation; YELP, INC., a Delaware corporation; NOWAIT, INC., a Delaware corporation; WINGMEN V, LLC, a Washington limited liability company, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  4:17-cv-07129-YGR<br><br>**REPLY IN SUPPORT OF WINGMEN V, LLC'S MOTION TO DISMISS THE COMPLAINT**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Date: February 27, 2018<br><br>Time: 2:00 pm<br><br>Courtroom: 1-4th Floor |

**TABLE OF CONTENTS**

**Page**

I.     THE MESSAGE FROM WINGMEN WAS NOT MARKETING ................................... 3

    A.     Plaintiff Cannot Look-Through The Message To Find A Marketing
         Purpose ........................................................................................................ 3

    B.     The Confirmatory Text Message Was Not Marketing ........................................... 5

    C.     The Text Message Was Not "Dual-Purpose" Because It Did Not Have A
         Marketing Component ......................................................................................... 6

    A.     Plaintiff's ATDS Allegations Are Contradicted By The Alleged Facts ................. 7

    B.     Plaintiff's Allegations Present Mere Possibilities ................................................. 9

    C.     ATDS Cases Upon Which Plaintiff Relies Show the Futility of His
         Position ............................................................................................................. 10

    D.     Plaintiff's Other ATDS Arguments Are Not Persuasive ..................................... 12

III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ........................... 14

CONCLUSION ............................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Aderhold v. car2go N.A. LLC*,
   668 F. App'x 795 (9th Cir. 2016) ........................................................................5, 6

*Arora v. Transworld Sys. Inc.*,
   No. 15-CV-4941, 2017 WL 3620742 (N.D. Ill. Aug. 23, 2017)................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................9

*Chesbro v. Best Buy Stores, L.P.*,
   705 F.3d 913 (9th Cir. 2012)..................................................................................6, 12

*Cohen v. Berkley Nat'l Ins. Co.*,
   No. 217CV00057GMNGWF, 2017 WL 3925418 (D. Nev. Sept. 6, 2017)...............14

*Daniel v. Five Stars Loyalty, Inc.*,
   No. 15-CV-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015)..............5, 6

*Derby v. AOL, Inc.*,
   No. 15-CV-00452-RMW, 2015 WL 3477658 (N.D. Cal. June 1, 2015)...................14

*Duguid v. Facebook, Inc.*,
   No. 15-cv-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) ...............11, 12

*Flores v. Access Ins. Co.*,
   No. 215CV02883CASAGRX, 2017 WL 986516 (C.D. Cal. Mar. 13, 2017)...............6

*Flores v. Adir International*,
   685 Fed. Appx. 533 (9th Cir. 2017) ........................................................................10

*Gragg v. Orange Cab Co., Inc.*,
   No. C12-0576RSL, 2013 WL 195466 (W.D. Wash. Jan. 17, 2013)........................14

*Herrick v. QLess*,
   216 F. Supp. 3d 816, 817 (E.D. Mich. 2016) ........................................................4, 5

*Holt v. Facebook, Inc.*,
   240 F. Supp. 3d 1021 (N.D. Cal. 2017) ..................................................................10

*Holt v. Redbox Automated Retail, LLC*,
   No. 11CV3046 DMS (RBB), 2013 WL 12114789 (S.D. Cal. June 20, 2013) .........3, 10, 11, 14

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   18 F.C.C. Rcd. 14014 (2003) ....................................................................................6

*Johnson v. Yahoo!, Inc.*,
   Nos. 14 CV 2028, 14 CV 2753, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014).................11, 12

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

*MacKinnon v. Hof's Hut Restaurants*,
No. 2:17-CV-01456-JAM-DB, 2017 WL 5754308 (E.D. Cal. Nov. 28, 2017)........................5

*Maieri v. J.C. Penney Corp., Inc.*,
No. 13cv01636-IEG (DHB), 2013 WL 3006415 (S.D. Cal. Jun. 13, 2013)......................10, 14

*McKenna v. WhisperText*,
No. 5:14-CV-00424-PSG, 2015 WL 428728 (N.D. Cal. June 1, 2015) ...................................14

*Meyer v. Bebe Stores, Inc.*,
No. 14-CV-00267-YGR, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015)................................6, 11

*Mogadam v. Fast Eviction Serv.*,
No. SACV 14-01912 JVS, 2015 WL 1534450 (C.D. Cal. Mar. 30, 2015)............................10

*Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*,
No. 5:17-CV-03504-EJD, 2017 WL 4536422 (N.D. Cal. Oct. 11, 2017) ...............................4

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*,
65 F. Supp. 3d 482, 492 (W.D. Mich. 2014) ............................................................................4

*Pozo v. Stellar Recovery Collection Agency, Inc.*,
No. 8:15-CV-929-T-AEP, 2016 WL 7851415 (M.D. Fla. Sept. 2, 2016) ..............................13

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990)..................................................................................................14

*Schlusselberg v. Receivables Performance Mgmt., LLC*,
2017 WL 2812884 (D. N.J. June 29, 2017) .............................................................................13

*Schneider v. Cal. Dep't of Corrections*,
151 F.3d 1194 (9th Cir. 1998)................................................................................................10

*Smith v. Stellar Recovery, Inc.*,
No. 2:15-CV-11717, 2017 WL 955128 (E.D. Mich. Mar. 13, 2017) ....................................13

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011)...................................................................................................9

*Strauss v. CBE Grp., Inc.*,
173 F. Supp. 3d 1302, 1311 (S.D. Fla. 2016) ........................................................................13

*Swearingen v. Healthy Beverage, LLC*,
No. 13-CV-04385-EMC, 2017 WL 1650552 (N.D. Cal. May 2, 2017) .................................14

*Toney v. Quality Res., Inc.*,
75 F. Supp. 3d 727, 738 (N.D. Ill. 2014) .................................................................................6

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017)...................................................................................................8

*Wick v. Twilio Inc.*,
No. C16-00914RSL, 2017 WL 2964855 (W.D. Wash. July 12, 2017) .........................5, 11, 12

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES**

47 C.F.R. § 64.1200(a)(1) ..............................................................................................8

47 C.F.R. § 64.1200(f)(1) ..............................................................................................1

47 U.S.C. § 227(b)(1)(a) ...............................................................................................8

**OTHER AUTHORITIES**

http://tiny.qless.com/androidApp." .................................................................................4

https://yelp.to/qTKq/ZzS6f90K9F ................................................................................3

https://yelp.to/qTKq/ZzS6f9OK9F ................................................................................1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

While Plaintiff tries to paint a picture of businesses targeting unwitting consumers, conspiring to invade their mobile privacy, and infiltrating their mobile phones with unwanted marketing spam, the alleged facts tell a very different story.

The facts alleged show that Plaintiff went to the Buffalo Wild Wings restaurant in Chino Hills, asked for a table, requested to be placed on the waitlist, voluntarily provided his mobile number to be waitlisted, and then received two text messages consistent with his request. Despite inviting the communications to which he now complains, Plaintiff filed this lawsuit alleging knowing and willful violations of the TCPA, requesting up to a whopping $1,500 in statutory damages for each text message he received, as well as another $1,500 for each text message received by Buffalo Wild Wings customers in restaurants across the country.

This case is a prime example of how the TCPA has been misused by plaintiffs and their lawyers in the hopes of generating lucrative settlements by driving up the costs of litigation through unnecessary discovery and expensive legal fees. There is nothing to suggest that the TCPA was intended to guard against these types of text messages. In fact, the Federal Communications Commission encourages these ordinary business-to-consumer telephonic communications. But lawsuits like this chill telephonic communications between companies and customers that are both expected and desired.

In this case, Plaintiff argues that the confirmatory text message related to his request to be seated at the Chino Hills restaurant constitutes an "advertisement," ignoring the actual content of the message and the transaction that he himself initiated. Under the TCPA, an "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). The text message at issue stated, "Check your place in line [link]. We will text you when your table is ready." On its face, this confirmatory message does not advertise the commercial availability of anything and is, consequently, not an advertisement. Even if the court were to look past the content of the text message, the optional link[1] merely facilitated Plaintiff's dining transaction, and specifically, allowed Plaintiff to "check [his] place in

---

[1] https://yelp.to/qTKq/ZzS6f9OK9F

line." This is not advertising in any sense of the word. Moreover, the communication directly related to the purpose for which Plaintiff voluntarily provided his mobile number.

Indeed, in arguing that this simple, confirmatory message is an "advertisement," Plaintiff relies on disjointed statements from a variety of unrelated sources that are several steps removed from the actual text message, focusing almost exclusively on speculation about Yelp's purported profits from the Nowait waitlist app. But that is not a sufficient basis to convert a confirmatory text message into an advertisement. If it were, every text message from every for-profit business would be marketing under the TCPA because somewhere down the line, the company makes a profit. That is not the law.

Plaintiff fails to allege sufficient facts demonstrating that the TCPA even applies to the text messages. The facts alleged in the complaint demonstrate that the text messages were specifically directed to Plaintiff and sent with human intervention. As the Complaint makes clear, the messages were a result of **cause and effect**. <u>Cause:</u> Plaintiff asked to be placed on the waitlist and provided his mobile number to the hostess for this purpose. <u>The effect</u>: Plaintiff received a confirmatory text message from the restaurant after the hostess manually typed in all ten digits of his phone number. <u>Cause:</u> The restaurant cleared, a table meeting Plaintiff's specifications become available, and the hostess was ready to seat Plaintiff. <u>The effect:</u> The hostess notified Plaintiff via text message that his table was ready.

The text messages were personal to Plaintiff and his dining position, undercutting the argument that the messages were sent "automatically." The idea that the hostess manually entered his phone number and the application ran "automatically" without human input from restaurant employees on table availability and assignment defies common sense. One could envision the chaos that would ensue if such a system existed and ran "automatically" without any regard for when restaurant employees were actually ready and available to serve guests.

The asserted claims against Wingmen are not viable and no amendment can save his flawed complaint. Plaintiff's complaint should be dismissed with prejudice.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1  **I.    THE MESSAGE FROM WINGMEN WAS NOT MARKETING**

2        **A.    <u>Plaintiff Cannot Look-Through The Message To Find A Marketing Purpose</u>**

3        Plaintiff's entire argument as to why the confirmation text message is marketing hinges on

4  looking far beyond the content of the message and searching far and wide for a marketing

5  purpose—any marketing purpose that may be found no matter how far removed or speculative it

6  may be.  That is not the law, however.  The law is clear that if "the *language* of the confirming

7  texts does not contain marketing or promotional information," the message is not marketing.

8  *Holt v. Redbox Automated Retail, LLC*, No. 11CV3046 DMS (RBB), 2013 WL 12114789, *4

9  (S.D. Cal. June 20, 2013) (emphasis added).

10        Plaintiff's attempt to distinguish *Redbox* is unavailing.  As Plaintiff recognizes, *Redbox*

11  involved a "single message" confirming an "explicit request."  Opp., Dkt. 29 at 19:21–23.  This

12  case also involves a single message confirming Plaintiff's explicit request to be placed on the

13  waitlist.  While Plaintiff tries to distinguish *Redbox* further by stating that "[t]he message only

14  stated that the consumers were unsubscribed and provided a link for more information, likely

15  pertaining to the opt-out request" (Opp., Dkt. 29 at 19:25–26), that is not the end of the analysis.

16  Rather, like the arguments Plaintiff makes here, the *Redbox* plaintiffs argued that "the texts

17  referenced a link to Defendant's website and solicited Plaintiffs to visit the website. According to

18  Plaintiffs, <u>if the consumer clicks on the link it takes the consumer to Defendant's website where</u>

19  <u>Defendant offers deals, movies and games, among other things</u>."  *Id.* at *4 (emphasis added).  The

20  court rejected this argument, finding that a confirmatory message is not converted into a

21  marketing message "based on what a consumer would find if he or she pursued the link."  *Id.*

22        That is precisely what Plaintiff's entire case is based on: what would happen if he pursued

23  the link.  As alleged in the complaint, the message from the Chino Hills restaurant simply said

24  "BWW: Check your place in line: https://yelp.to/qTKq/ZzS6f90K9F We will text you when your

25  table is ready."  Compl., ¶ 20.  There is no marketing content in the message whatsoever and

26  Plaintiff's complaint and opposition make it abundantly clear that the only possible way to

27

28

manufacture marketing content is by looking through the message.[2]

However, none of the cases Plaintiff relies on support such an approach. In fact, the two cases upon which Plaintiff places primary reliance for his position that the messages are marketing are inapplicable because both involved text messages where an app was promoted **in the text of the message received by the consumer**. *See Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*, No. 5:17-CV-03504-EJD, 2017 WL 4536422, at *2 (N.D. Cal. Oct. 11, 2017) (text message specifically stated "Download our app here"); *Herrick v. QLess*, 216 F. Supp. 3d 816, 817 (E.D. Mich. 2016) (text message specifically stated "Android users: Try our QLess app to see your wait in real time, control when you get served & find more places with no lines— http://tiny.qless.com/androidApp."). Further, in *Herrick*, the text message *itself* encouraged the user to "find more places with no lines."

Plaintiff attempts to distinguish the multitude of cases recognizing that whether a message is transactional or advertising must be decided from the face of the message on the basis that the cases arise in the fax context.[3] This position is misguided. The TCPA regulates advertisements for both telephone and telephone facsimile machines, thus it is logical and appropriate that a court would look to fax cases to inform a telephone call case, and vice versa. At bottom, a link by itself does not transform an otherwise permissible, confirmatory message into a marketing message.[4]

---

[2] Plaintiff asserts that the text message "advertised" "BWW's Blazin' Rewards app and rewards program." Opp., Dkt. 29 at 13:22. He further claims that Defendants made an "effort to bribe plaintiff into participation in the loyalty program." Opp., Dkt. 29 at 16:2–3; 16:2-4. This appears to be the result of a copy and paste from Plaintiff's other opposition briefs, since the text message from the Chino Hills restaurant location owned by Wingmen makes no mention of a rewards, loyalty, or membership program. *See* Compl. ¶ 20.

[3] Curiously, while faulting Wingmen for citing fax cases, Plaintiff relies on several fax cases to support his position. For example, in *Stryker*, the fax offered physicians a free dinner and seminar about a medical product promoted by the defendant. The court concluded that it was not clear whether the fax was an advertisement on its face and that content about the seminar may be relevant. *See Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 492 (W.D. Mich. 2014). Here, the face of the text messages alone demonstrate that they were not marketing.

[4] In perhaps the best example of how far afield Plaintiff will go in an attempt to state a claim, he argues that to "download the apps, Plaintiff would have to divulge even more of his information and accede to Defendants' terms of use which contain copious provisions modifying the parties' legal relationship, affecting a user's ability to bring claims, and permitting Defendants to send them certain text messages." Opp., Dkt. 29 at 15:26–16:1. *See also id.* 16:2:20. Even if this were true, this has nothing to do with the text message he requested and received about the waitlist. Moreover, Plaintiff does not even allege that he downloaded the app (because he did not), and therefore this discussion is entirely irrelevant, not to mention speculative.

### B. The Confirmatory Text Message Was Not Marketing

It is well accepted in the Ninth Circuit that messages confirming a transaction initiated by the plaintiff are not marketing. *See Aderhold v. car2go N.A. LLC*, 668 F. App'x 795, 796 (9th Cir. 2016); *MacKinnon v. Hof's Hut Restaurants*, No. 2:17-CV-01456-JAM-DB, 2017 WL 5754308 (E.D. Cal. Nov. 28, 2017); *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at *5 (W.D. Wash. July 12, 2017); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015).

*MacKinnon* is virtually indistinguishable from this case, yet Plaintiff argues that *MacKinnon* is inapplicable because the message Plaintiff received "did not simply confirm a reservation or notify Plaintiff of his place in line." Opp., Dkt. 29 at 13:16–17. Plaintiff is wrong. Here, as in *MacKinnon*, the message confirmed a request to dine at the restaurant and provided information to facilitate that request. Plaintiff is also wrong that the text "implore[d] Plaintiff to download the" Nowait app. Opp., Dkt. 29 at 14:8–9. The text does not even mention the app, let alone plead with Plaintiff to download it. Compare with *Herrick*, 216 F. Supp. 3d at 817 ("Android users: Try our QLess app…"). Rather, Plaintiff was merely given an option to check his place in line, further facilitating his request to be notified about table availability. This is no different than *MacKinnon* where the optional link displayed the restaurant's nightly specials to facilitate the guest's dining experience. In fact, displaying nightly specials to purchase is more akin to marketing than an option to remotely monitor one's place in line. *MacKinnon* thus compels the conclusion that the message here was not marketing.

Plaintiff's attempt to distinguish *Aderhold*, 668 F. App'x 795 and *Daniel*, 2015 WL 7454260 is unequally unavailing. According to Plaintiff, these cases are distinguishable because they involved plaintiffs "completing registration in a program that the plaintiffs had voluntarily sought to join." Opp., Dkt. 29 at 15:5–6. This is a distinction without a difference. In *Aderhold*, Plaintiff sought to join a car share membership, in *Daniel*, plaintiff sought to join a rewards program, and here, Plaintiff sought to join a restaurant waitlist. In each of these cases, the plaintiff, Meeks included, voluntarily provided their telephone numbers to join the program and

thereafter received messages consistent with their requests.  In *Aderhold* and *Daniel*, like here, the messages facilitated a transaction initiated by the plaintiff and the courts held they were not marketing.

### C.  The Text Message Was Not "Dual-Purpose" Because It Did Not Have A Marketing Component

Recognizing the weakness of his position, Plaintiff resorts to arguing that the waitlist text message was "dual-purpose"—both informational and marketing—and therefore constitutes marketing under the TCPA.  In order to be "dual-purpose," messages must have a "marketing component" in that they typically encourage "future purchasing activity" under the guise of customer service.  *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012).  The FCC has provided examples of dual-purpose messages: "calls from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers."  *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14098 (2003).  By contrast, the message here does not encourage any future purchase at the restaurant or otherwise.  Rather, it merely confirms a transaction already in progress: being waitlisted at the restaurant.

Accordingly, the cases Plaintiff relies on are inapplicable.  *See Flores v. Access Ins. Co.*, No. 215CV02883CASAGRX, 2017 WL 986516, at *8 (C.D. Cal. Mar. 13, 2017) (message dual-purpose where it notified plaintiff that insurance was about to lapse and encouraged making a payment to renew policy); *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015)  (message dual-purpose where it offered 10% off a future purchase if plaintiff confirmed her opt-in); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 738 (N.D. Ill. 2014) (call dual-purpose where caller tried to sell plaintiff additional products under guise of verifying her address).  It is apparent that the message here is not dual-purpose—it merely served to confirm Plaintiff's request for a table and facilitate Plaintiff's own request.

There is no basis to conclude that the message here required "prior express written

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

consent" because it lacked a marketing purpose or component. Plaintiff admits that he has no claim if the message is not marketing, as he concedes that he provided prior express consent by acknowledging that "in order to be notified when he table was ready[,] [h]e provided his number orally to the host." Opp., Dkt. 29 at 11:19-23; 24:8–9. Since the text message was not marketing and Plaintiff voluntarily provided his mobile number, Plaintiff provided express consent to be contacted about his request for a table and his TCPA claims fail as a matter of law.

## II. PLAINTIFF'S CLAIM THAT AN ATDS WAS USED FAILS ON ITS FACE

### A. Plaintiff's ATDS Allegations Are Contradicted By The Alleged Facts

Plaintiff is correct that a system with the capacity to dial numbers without human intervention is an ATDS. Opp., Dkt. 29 at 11:9-20. Plaintiff is also correct that a plaintiff may plead facts that support an inference that a system has the requisite capacity and that the text messages were not sent with human intervention. Opp., Dkt. 29 at 11:21-25. But Plaintiff fails to plead a single *fact* supporting an inference that the waitlist application had the requisite capacity to autodial. In fact, the sum total of Plaintiffs ATDS allegations are as follows:

- Defendant sent the text messages "an automatic telephone dialing system ("ATDS")." Compl. ¶ 32.

- "Customers do not receive text messages from restaurants directly but automatically through Yelp/Nowait's platform." Compl. ¶ 33

- "Defendants' system uses software that can store a database of cellphone numbers and then automatically send text messages to those stored telephone numbers" Compl. ¶ 34

*See* Opp., Dkt. 29 at 10:7-14. These conclusory allegations are wholly unsupported by any of the factual allegations, which are that Plaintiff visited two Buffalo Wild Wings locations, gave his phone number to the hosts in connection with his request for a table, and received two text messages.[5] While Plaintiff prefers to conflate the two text messages he received, in the hopes

---

[5] While Plaintiff repeatedly talks about "spam" messages sent "en masse," he alleges only two text messages from each restaurant for each of his two visits. He does not allege that he received a single text message after leaving the restaurants, debunking his conclusory allegations that the app had the capacity to both store numbers and

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

that the Court will not notice, the two text messages are distinct and should be considered separately.

As Plaintiff admits, the first text message confirming his place on the waitlist was sent contemporaneously with him providing the hostess his full telephone number and the hostess *manually keying all ten digits into the Nowait application*.  Compl. ¶ 20  As such, **there is no way that the initial confirmatory text message could have been automated or sent with an "autodialer."**  Any other conclusion defies common sense and the plain allegations of Plaintiff's complaint.  Since the initial text message Plaintiff alleged received was not sent with an autodialer, the TCPA does not apply and could not have been violated.  47 U.S.C. § 227(b)(1)(a); 47 C.F.R. § 64.1200(a)(1) (regulating automated telephone calls sent with a prerecorded voice or by an "automatic telephone dialing system").

The second and last text message was sent contemporaneously with Plaintiff's table being ready and the restaurant being prepared to seat him.[6]  Compl. ¶¶ 19, 26.  This too shows that an autodialer was not used to send these message because it was uniquely tailored to Plaintiff and his position on the waitlist.  Even if the Court is persuaded that Plaintiff has sufficiently pled an autodialer with respect to this second text message, the message is **clearly devoid of any marketing purpose whatsoever**.  It merely said "his table was ready." *Id.* ¶ 26.  Not even Plaintiff can argue that this second message constituted marketing.  Automated transactional text messages under the TCPA require only "prior express consent," which was easily satisfied when Plaintiff voluntarily provided his mobile number to the hostess. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1045 (9th Cir. 2017) ("a consumer consents to contact for transaction-related communications when the consumer provides his or her phone number to the caller").  So even if the second text message was sent with an "autodialer" (which it was not), Plaintiff's TCPA claims still fail.  On this basis alone, Wingmen's motion to dismiss should be

---

automatically generate messages.

[6] If Plaintiff's complaint is not dismissed, Wingmen intends to file a motion for summary judgment detailing how restaurant employees manually input data into the waitlist application and send individual text messages to customers on the waitlist.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

granted.

**B.**      **Plaintiff's Allegations Present Mere Possibilities**

Plaintiff also argues that his complaint shows that he was autodialed because he alleged that the phone numbers from which the messages were sent did not connect to a live person at the restaurants. Opp., Dkt, 29, at 7:22–23; Compl. ¶ 20 ("If called, the telephone number from which the text message was sent will disconnect the caller."). Plaintiff presents a mere possibility; he does not present a plausible ATDS theory.

Plaintiff's allegations establish that Nowait is an application that allows the hostess to communicate with customers via *text message*. Compl. ¶¶ 14, 19, 20, 26. Plaintiff does not allege that the Nowait application can send or receive *voice* messages. Plaintiff also does not allege that he attempted to text the phone number from which he received the messages. The fact that he was unable to reach the hostess by *calling* the phone number that texted him does not preclude the likelihood that if he had *texted* the phone number he would have received a personalized response from the hostess.[7] Plaintiff's allegations merely support the inference that the application was not designed to take voice calls, not that an ATDS was used to call him.

This is not enough to state a plausible claim and his claim should be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (if a complaint pleads facts "that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief"; "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief") (internal citations omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level," requiring the complaint "contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action"); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be

---

[7] *See* supra note 7.

1    subjected to the expense of discovery and continued litigation").

2         **C.    ATDS Cases Upon Which Plaintiff Relies Show the Futility of His Position**

3         Plaintiff's cases do not warrant a different conclusion on the ATDS question.  In *Flores v.*

4    *Adir International*, Flores alleged that he received *identical* text messages on four separate

5    occasions, despite his repeated opt-out requests.  685 F. App'x. 533, 534 (9th Cir. 2017).  The

6    court noted that these *identical* texts were generically formatted, appeared to be scripted, and

7    were impersonal to Plaintiff.  *Id.* at 533.  Similarly, in *Maieri v. J.C. Penney Corp., Inc.*, No.

8    13cv01636-IEG (DHB), 2013 WL 3006415 (S.D. Cal. Jun. 13, 2013), the plaintiff received a

9    generic and impersonal message, imploring her to join J.C. Penney's texting program.  *Id.* at *1.

10        *Flores* and *Maieri* are easily distinguishable because the text messages Plaintiff received

11   were not identical and were specifically directed at him, his place in line, and timed according to

12   his position on the waitlist.  Compl. ¶ 20 ("We will text **you** when **your table** is ready."); ¶ 26

13   (text message notified plaintiff "this **his** table was ready") (emphasis added to both).  Accordingly,

14   they were tailored to Plaintiff's unique circumstances and were, in fact, personal to him.[8]

15        The case of *Mogadam v. Fast Eviction Serv.* only supports the inference that an ATDS

16   was not used to text Plaintiff.  In that case, the plaintiff alleged he received an *unsolicited* generic

17   message out of the blue from a short code regarding eviction services.  No. SACV 14-01912 JVS,

18   2015 WL 1534450, at *1 (C.D. Cal. Mar. 30, 2015).  But the text messages here were hardly "out

19   of the blue."  They were sent at Plaintiff's request when he provided his mobile number to the

20   hostess to be placed on the waitlist.  Plaintiff received a confirmation message directly relating to

21   his request for a table immediately after providing his phone number to the hostess and then a

22   subsequent text message when his table was ready.  As such, the facts here compel the *opposite*

23   conclusion—that the restaurant hostess manually initiated the text messages.

24        Plaintiff also cites *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017).  In *Holt*,

---

[8] Plaintiff's digression about long and short code messages is irrelevant.  Opp., Dkt. 29 at 7:26–9:3.  It is not alleged in the complaint and Plaintiff cannot use his opposition brief to replead his complaint.  *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("The 'new' allegations contained in the [plaintiff's] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes.")  Moreover, this argument is based on speculation, not facts.  It is a red herring to confuse the Court and should be disregarded.

the court noted that plaintiff's allegations must "raise an inference that an ATDS was utilized." *Id.* at 1027 (quoting *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 WL 1169365, at *4 (N.D. Cal. Mar. 24, 2016)). These allegations include "the content of the message, the context in which it was received, and the existence of similar messages." *Id.* Notably, in *Holt*, plaintiff was sent an impersonal message from a short code imploring her to update her Facebook account, but she did not have a Facebook account. The court's finding that an ATDS may have been used to send the message hinged on the fact that "Holt had no reason to be in contact with Facebook." *Id.* at 1030. Thus, these facts raised an inference that Holt automatically received the text messages once the account associated with her phone number crossed an activity threshold set by Facebook's software. Here, Plaintiff had *every* reason to be in contact with the Chino Hills restaurant since he specifically requested to be texted. He knew full well he would receive text messages when he provided his phone number and asked to be waitlisted. Further, unlike *Holt*, the messages were tied to **manually driven, in-person events** at the restaurant and were "targeted" to Plaintiff specifically. *Cf. Holt*, 240 F. Supp. 3d at 1029-30.

In *Meyer v. Bebe Stores, Inc.*, plaintiff provided her phone number to a Bebe store employee "believing it was necessary to complete an in-store return/purchase transaction and for no other purpose." No. 14-cv-00267-YGR, 2015 WL 431148, at *1 (N.D. Cal. Feb. 2, 2015). Subsequently, she received an *unsolicited* text message urging her to opt in to Bebe's texting program. *Id.* The alleged facts in *Meyer* were sufficient to support an inference that the generic text messages were automatically sent *en masse* to customers who had unwittingly provided their phone numbers in conjunction with an entirely unrelated transaction. The alleged facts here do not support an inference the text messages were sent *en masse*. Mass text messages could ***not*** have been sent to hundreds or thousands of restaurant guests at the same time because the text messages were specific to an individual guest and their individual place on the waitlist. After all, the text messages must have been particularized if the guest could "check [their] place in line." Compl. ¶¶ 14, 20.

Equally unavailing is Plaintiff's reliance on *Johnson v. Yahoo!, Inc.*, Nos. 14 CV 2028,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

14 CV 2753, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014) and *Wick v. Twilio, Inc.*, No. 2017 WL 2964855 (W.D. Wash., Jul. 12, 2017).  In *Johnson*, there was evidence that the system had the capacity to store, cross-reference, and pull phone numbers from its database for the purpose of automatically texting consumers.  Similarly, in *Wick*, the complaint plausibly alleged that the platform stored phone numbers to automatically build and send text messages via a computer program.  Plaintiff's uniquely personal and uniquely timed messages belie his assertion that the text messages were sent automatically by the Nowait application.  Moreover, Plaintiff's assertion that he had to provide his phone number *again* at the *second* restaurant he visited (Chino Hills) belies his assertion that the system *stores* the phone numbers.  Plaintiff alleges no facts suggesting that the Nowait application had to the capacity to store and automatically send text messages without human intervention.

Plaintiff also attempts to distinguish *Duguid*, 2016 WL 1169365, at *5 by claiming (1) "The facts in *Duguid* did not show a large-scale marketing campaign like the one alleged in this case, where potentially every customer entered into Defendants' wait list was spammed with marketing messages"; and (2) "the content of the text messages, the intended recipients, and the timing of the transmission were all predetermined by Nowait's software."  Opp., Dkt. 29 at 17:1-7.  But Plaintiff has not alleged any facts suggesting a large-scale "marketing" campaign, or that any customer's phone number was stored or "spammed" with marketing messages.  Instead, Plaintiff's alleges that he received two contemporaneously timed messages directly related to his request for a table and based on circumstances present at the restaurant.  Plaintiff does not allege or explain how the Nowait application could have predetermined the *content* of the text messages or how the Nowait application could have timed the transmission of messages to an **in-person event** at the restaurant without human intervention.

In short, none of the cases Plaintiff cites warrant a different conclusion that the one necessitated by the alleged facts—the text messages were not sent with an autodialer.

**D.**     **Plaintiff's Other ATDS Arguments Are Not Persuasive**

Plaintiff argues in opposition that he received the initial text message "far faster than the

hostess could physically type out the message." Opp., Dkt. 29 at 6:19-20. But the definition of an ATDS does not require that the hostess manually type the content of the text message. That the restaurant may have standardized the content of its confirmation message does not change the fact that the message was *manually initiated* by the hostess in direct response to Plaintiff's dining request. **_The important allegation here is that the hostess had to manually type all ten digits of plaintiff's phone number in order to initiate a text message confirming Plaintiff's spot on the waitlist._** Compl. ¶ 20. That is the anti-thesis of an autodialer.

Next, Plaintiff argues that the app sends text messages "automatically, as soon as hostess [sic] enters the customer phone number into the waitlist." Opp., Dkt. 29 at 12:28-13:2. Despite Plaintiff's creative use of the word "automatically" here, what Plaintiff describes is actually the definition of human intervention. Under Plaintiff's strained interpretation, every *manually initiated* text message can be considered to be sent "automatically" as soon as the sender types in the recipient's ten digit phone number and hits "send." This is clearly not the definition of an autodialer and is contrary to well-established case law stating otherwise. *See* Motion to Dismiss, Dkt. 24 at 14:19–15:13.

For example, courts have held that a single click to dial (not a ten digit dial) is sufficient to demonstrate that an autodialer was not used to generate a call or text message. *See Arora v. Transworld Sys. Inc.*, No. 15-CV-4941, 2017 WL 3620742 at *3 (N.D. Ill. Aug. 23, 2017) (system was not an ATDS where agent clicked a single button to initiate call); *Schlusselberg v. Receivables Performance Mgmt., LLC*, 2017 WL 2812884 (D. N.J. June 29, 2017) (same); *Smith v. Stellar Recovery, Inc.*, No. 2:15-CV-11717, 2017 WL 955128, at *3 (E.D. Mich. Mar. 13, 2017) (same); *Pozo v. Stellar Recovery Collection Agency, Inc.*, No. 8:15-CV-929-T-AEP, 2016 WL 7851415, at *3 (M.D. Fla. Sept. 2, 2016) (same); *Strauss v. CBE Grp., Inc.*, 173 F. Supp. 3d 1302, 1311 (S.D. Fla. 2016) (same). Given that a single click is sufficient to take a platform outside the realm of an ATDS, it must follow then that having to **manually input all ten digits of phone number** must be too.

In conclusion, Plaintiff has failed to allege a single fact supporting the inference that the

Nowait app has the capacity to send messages without human intervention. His allegations actually compel a contrary inference. *See Maier*, 2013 WL 3006415, at \*4 ("[W]here factual allegations made in a plaintiff's complaint 'are unsupported by any specific facts and appear less likely than the alternate inference, namely that plaintiff received a customer specific text ... through human agency, rather than an ATDS' the pleading standard for this [ATDS] element is not met.") (quoting *Gragg v. Orange Cab Co., Inc.*, No. C12-0576RSL, 2013 WL 195466, at \*2 (W.D. Wash. Jan. 17, 2013)); *Holt*, 240 F. Supp. 3d at 1027 (Plaintiff's allegations "can also indicate the presence of human intervention that refutes the use of an ATDS.").

As such, discovery is unnecessary and would be a waste of time because Plaintiff's allegations already make clear that the text messages Plaintiff received could not have been sent with an autodialer. Since Plaintiff fails to plead that the text messages were sent with an ATDS, his TCPA complaint should be dismissed. *See Derby v. AOL, Inc.*, No. 15-CV-00452-RMW, 2015 WL 3477658, at \*4 (N.D. Cal. June 1, 2015) (dismissing TCPA claim where allegations of complaint precluded need for discovery on autodialer issue); *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 428728, at \*4 (N.D. Cal. June 1, 2015) (same).

**III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE**

The complaint should be dismissed with prejudice because leave to amend would be futile. Plaintiff cannot allege new facts to state a claim without expressly contradicting the allegations in his complaint. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990); *see also Cohen v. Berkley Nat'l Ins. Co.*, No. 217CV00057GMNGWF, 2017 WL 3925418, at \*4 (D. Nev. Sept. 6, 2017) ("To allow Plaintiffs to amend their Complaint to allege facts that are in direct contradiction to the facts alleged . . . would be futile."); *Swearingen v. Healthy Beverage, LLC*, No. 13-CV-04385-EMC, 2017 WL 1650552, at \*5 (N.D. Cal. May 2, 2017) (dismissal with prejudice proper where amendment would be "squarely inconsistent with a prior allegation").

**CONCLUSION**

Plaintiff's complaint should be dismissed for two primary reasons (1) the messages were transactional and sent with his express consent and (2) they were not sent with an autodialer, and

therefore the TCPA does not apply.

Plaintiff cannot plausibly allege that he received a marketing message from Wingmen because the face of the message confirming his place on the waitlist is devoid of marketing. Plaintiff's strained attempts to identify a marketing purpose—no matter how speculative and attenuated to the message received—are improper and should be rejected outright. The alleged facts show that the messages were transactional and sent at Plaintiff's own request. Because Plaintiff provided his mobile number to the hostess in order to be placed on the waitlist and notified when his table was ready, he consented to receive the messages and thus, his TCPA claims fail on their face.

Plaintiff's TCPA claims also fail because his complaint allegations make clear that an ATDS did not initiate the text messages. The messages were uniquely personal to him and timed to his specific dining request and place on the waitlist. The hostess manually keyed in all ten digits of his phone number in order to send the first message confirming Plaintiff's status on the waitlist. The alleged facts also show that the subsequent message notifying him that his table was ready was manually initiated by the hostess, according to the restaurant's table and server availability and when the hostess was ready to seat him. The only logical inference that can be gleaned from the allegations is that both messages were humanly initiated and not automatically sent by an ATDS. Even if Plaintiff could plausibly allege that the second text message was sent with an ATDS, Plaintiff's claim still fails because the message simply notified him that his table was ready and was sent with his express consent. Either way, Plaintiff's TCPA claims are meritless. Accordingly, Plaintiff's complaint should be dismissed with prejudice and judgment entered for Wingmen.

DATED:  February 6, 2018                    MANATT, PHELPS & PHILLIPS, LLP


                                            By: /s/ Christine M. Reilly
                                                Christine M. Reilly
                                                Attorneys for Defendant
                                                Wingmen V, LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**CERTIFICATE OF SERVICE**

I, **Christine M. Reilly**, declare:

I am employed in Los Angeles, California. I am over the age of eighteen years and not a party to this action. My business address is MANATT, PHELPS & PHILLIPS, LLP, 11355 West Olympic Boulevard, Los Angeles, CA 90064. On the date set forth below, I served the within documents:

**REPLY IN SUPPORT OF DEFENDANT WINGMEN V'S MOTION TO DISMISS**

on the interested parties in this action addressed as follows:

**SEE ATTACHED SERVICE LIST**

☑      **(BY ELECTRONIC SERVICE)** Using CM/ECF, I caused an electronic version of the document(s) to be sent to the person)(s) listed below.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 6, 2018**, at Los Angeles, California.


/s/ *Christine M. Reilly*
                 **Christine M. Reilly**

**SERVICE LIST**

| | |
|---|---|
| Justin Kachadoorian, Esq.<br>Alexandria R Kachadoorian, Esq.<br>Anthony J Orshansky, Esq.<br>CounselOne PC<br>9301 Wilshire Boulevard, Suite 650<br>Beverly Hills, CA 90210<br>Telephone:  (310) 277-9945<br>Facsimile:  (424) 277-3272<br>Email:  justin@counselonegroup.com<br>          Alexandria@counselonegroup.com<br>          Anthony@counselonegroup.com<br><br>*Attorneys for Plaintiff Marche Meeks* | Anahit Tagvoryan, Esq.<br>Harrison Maxwell Brown, Esq.<br>Safia G. Hussain, Esq.<br>Blank Rome LLP<br>2029 Century Park East, 6th Floor<br>Los Angeles, CA 90067<br>Telephone:   (424) 239-3400<br>Facsimile:   (424) 239-3434<br>Email:  atagvoryan@blankrome.com<br>          hbrown@blankrome.com<br>          shussain@blankrome.com<br><br>*Attorneys for Defendants Buffalo Wild Wings, Inc. and Blazin Wings, Inc.* |
| Brian Adair Sutherland, Esq.<br>Ashley Lynn Shively, Esq.<br>Reed Smith LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA  94105<br>Telephone:  (415) 543-8700<br>Facsimile:  (415) 391-8269<br>Email:  bsutherland@reedsmith.com<br>          ashively@reedsmith.com<br><br>*Attorneys for Defendants Yelp Inc. and Nowait, Inc.* | |

319840619.1