MANATT, PHELPS & PHILLIPS, LLP
CHRISTINE M. REILLY (Bar No. CA 226388)
E-mail:  CReilly@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:      (310) 312-4000
Facsimile:      (310) 312-4224

Attorneys for Defendant
Wingmen V, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARCHE MEEKS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BUFFALO WILD WINGS, INC., a Minnesota corporation; BLAZIN WINGS, INC., a Minnesota corporation; YELP, INC., a Delaware corporation; NOWAIT, INC., a Delaware corporation; WINGMEN V, LLC, a Washington limited liability company, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  4:17-cv-07129-YGR<br><br>**REPLY IN SUPPORT OF WINGMEN V, LLC'S MOTION TO DISMISS THE COMPLAINT**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Date: February 27, 2018<br><br>Time: 2:00 pm<br><br>Courtroom: 1-4th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.     THE MESSAGE FROM WINGMEN WAS NOT MARKETING ................................... 3

       A.     Plaintiff Cannot Look-Through The Message To Find A Marketing
              Purpose .................................................................................................. 3

       B.     The Confirmatory Text Message Was Not Marketing ............................ 5

       C.     The Text Message Was Not "Dual-Purpose" Because It Did Not Have A
              Marketing Component .......................................................................... 6

       A.     Plaintiff's ATDS Allegations Are Contradicted By The Alleged Facts ............. 7

       B.     Plaintiff's Allegations Present Mere Possibilities ................................... 9

       C.     ATDS Cases Upon Which Plaintiff Relies Show the Futility of His
              Position ................................................................................................ 10

       D.     Plaintiff's Other ATDS Arguments Are Not Persuasive ...................... 12

III.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ........................... 14

CONCLUSION ............................................................................................................. 14

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aderhold v. car2go N.A. LLC,*
 668 F. App'x 795 (9th Cir. 2016) ........................................................................5, 6

*Arora v. Transworld Sys. Inc.,*
 No. 15-CV-4941, 2017 WL 3620742 (N.D. Ill. Aug. 23, 2017)...............................13

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) .................................................................................................9

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007) .................................................................................................9

*Chesbro v. Best Buy Stores, L.P.,*
 705 F.3d 913 (9th Cir. 2012).................................................................................6, 12

*Cohen v. Berkley Nat'l Ins. Co.,*
 No. 217CV00057GMNGWF, 2017 WL 3925418 (D. Nev. Sept. 6, 2017) .............14

*Daniel v. Five Stars Loyalty, Inc.,*
 No. 15-CV-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015)..............5, 6

*Derby v. AOL, Inc.,*
 No. 15-CV-00452-RMW, 2015 WL 3477658 (N.D. Cal. June 1, 2015)..................14

*Duguid v. Facebook, Inc.,*
 No. 15-cv-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) ...............11, 12

*Flores v. Access Ins. Co.,*
 No. 215CV02883CASAGRX, 2017 WL 986516 (C.D. Cal. Mar. 13, 2017) ............6

*Flores v. Adir International,*
 685 Fed. Appx. 533 (9th Cir. 2017) .......................................................................10

*Gragg v. Orange Cab Co., Inc.,*
 No. C12-0576RSL, 2013 WL 195466 (W.D. Wash. Jan. 17, 2013) .......................14

*Herrick v. QLess,*
 216 F. Supp. 3d 816, 817 (E.D. Mich. 2016) ........................................................4, 5

*Holt v. Facebook, Inc.,*
 240 F. Supp. 3d 1021 (N.D. Cal. 2017) .................................................................10

*Holt v. Redbox Automated Retail, LLC,*
 No. 11CV3046 DMS (RBB), 2013 WL 12114789 (S.D. Cal. June 20, 2013) .........3, 10, 11, 14

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
 18 F.C.C. Rcd. 14014 (2003) ..................................................................................6

*Johnson v. Yahoo!, Inc.,*
 Nos. 14 CV 2028, 14 CV 2753, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014) .................11, 12

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*MacKinnon v. Hof's Hut Restaurants*,
   No. 2:17-CV-01456-JAM-DB, 2017 WL 5754308 (E.D. Cal. Nov. 28, 2017)........................5

4

5

*Maieri v. J.C. Penney Corp., Inc.*,
   No. 13cv01636-IEG (DHB), 2013 WL 3006415 (S.D. Cal. Jun. 13, 2013)......................10, 14

6

*McKenna v. WhisperText*,
   No. 5:14-CV-00424-PSG, 2015 WL 428728 (N.D. Cal. June 1, 2015) ...................................14

7

*Meyer v. Bebe Stores, Inc.*,
   No. 14-CV-00267-YGR, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015)................................6, 11

8

9

*Mogadam v. Fast Eviction Serv.*,
   No. SACV 14-01912 JVS, 2015 WL 1534450 (C.D. Cal. Mar. 30, 2015)............................10

10

*Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*,
   No. 5:17-CV-03504-EJD, 2017 WL 4536422 (N.D. Cal. Oct. 11, 2017) ...............................4

11

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*,
   65 F. Supp. 3d 482, 492 (W.D. Mich. 2014) .........................................................................4

12

*Pozo v. Stellar Recovery Collection Agency, Inc.*,
   No. 8:15-CV-929-T-AEP, 2016 WL 7851415 (M.D. Fla. Sept. 2, 2016) ..............................13

13

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990)..................................................................................................14

14

15

*Schlusselberg v. Receivables Performance Mgmt., LLC*,
   2017 WL 2812884 (D. N.J. June 29, 2017) ...........................................................................13

16

*Schneider v. Cal. Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998)................................................................................................10

17

18

*Smith v. Stellar Recovery, Inc.*,
   No. 2:15-CV-11717, 2017 WL 955128 (E.D. Mich. Mar. 13, 2017) .....................................13

19

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011)..................................................................................................9

20

*Strauss v. CBE Grp., Inc.*,
   173 F. Supp. 3d 1302, 1311 (S.D. Fla. 2016) .......................................................................13

21

22

*Swearingen v. Healthy Beverage, LLC*,
   No. 13-CV-04385-EMC, 2017 WL 1650552 (N.D. Cal. May 2, 2017) ..................................14

23

*Toney v. Quality Res., Inc.*,
   75 F. Supp. 3d 727, 738 (N.D. Ill. 2014) ................................................................................6

24

25

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017)..................................................................................................8

26

*Wick v. Twilio Inc.*,
   No. C16-00914RSL, 2017 WL 2964855 (W.D. Wash. July 12, 2017) .........................5, 11, 12

27

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES**

47 C.F.R. § 64.1200(a)(1) ................................................................................8

47 C.F.R. § 64.1200(f)(1) .................................................................................1

47 U.S.C. § 227(b)(1)(a) ..................................................................................8

**OTHER AUTHORITIES**

http://tiny.qless.com/androidApp." ..................................................................4

https://yelp.to/qTKq/ZzS6f90K9F ..................................................................3

https://yelp.to/qTKq/ZzS6f9OK9F ..................................................................1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

1    While Plaintiff tries to paint a picture of businesses targeting unwitting consumers,

2    conspiring to invade their mobile privacy, and infiltrating their mobile phones with unwanted

3    marketing spam, the alleged facts tell a very different story.

4    The facts alleged show that Plaintiff went to the Buffalo Wild Wings restaurant in Chino

5    Hills, asked for a table, requested to be placed on the waitlist, voluntarily provided his mobile

6    number to be waitlisted, and then received two text messages consistent with his request.  Despite

7    inviting the communications to which he now complains, Plaintiff filed this lawsuit alleging

8    knowing and willful violations of the TCPA, requesting up to a whopping $1,500 in statutory

9    damages for each text message he received, as well as another $1,500 for each text message

10    received by Buffalo Wild Wings customers in restaurants across the country.

11    This case is a prime example of how the TCPA has been misused by plaintiffs and their

12    lawyers in the hopes of generating lucrative settlements by driving up the costs of litigation

13    through unnecessary discovery and expensive legal fees.  There is nothing to suggest that the

14    TCPA was intended to guard against these types of text messages.  In fact, the Federal

15    Communications Commission encourages these ordinary business-to-consumer telephonic

16    communications.  But lawsuits like this chill telephonic communications between companies and

17    customers that are both expected and desired.

18    In this case, Plaintiff argues that the confirmatory text message related to his request to be

19    seated at the Chino Hills restaurant constitutes an "advertisement," ignoring the actual content of

20    the message and the transaction that he himself initiated.  Under the TCPA, an "advertisement" is

21    "any material advertising the commercial availability or quality of any property, goods, or

22    services."  47 C.F.R. § 64.1200(f)(1).  The text message at issue stated, "Check your place in line

23    [link].  We will text you when your table is ready."  On its face, this confirmatory message does

24    not advertise the commercial availability of anything and is, consequently, not an advertisement.

25    Even if the court were to look past the content of the text message, the optional link[1] merely

26    facilitated Plaintiff's dining transaction, and specifically, allowed Plaintiff to "check [his] place in

27    _____

[1] https://yelp.to/qTKq/ZzS6f9OK9F

28

line." This is not advertising in any sense of the word. Moreover, the communication directly related to the purpose for which Plaintiff voluntarily provided his mobile number.

Indeed, in arguing that this simple, confirmatory message is an "advertisement," Plaintiff relies on disjointed statements from a variety of unrelated sources that are several steps removed from the actual text message, focusing almost exclusively on speculation about Yelp's purported profits from the Nowait waitlist app. But that is not a sufficient basis to convert a confirmatory text message into an advertisement. If it were, every text message from every for-profit business would be marketing under the TCPA because somewhere down the line, the company makes a profit. That is not the law.

Plaintiff fails to allege sufficient facts demonstrating that the TCPA even applies to the text messages. The facts alleged in the complaint demonstrate that the text messages were specifically directed to Plaintiff and sent with human intervention. As the Complaint makes clear, the messages were a result of **cause and effect**. Cause: Plaintiff asked to be placed on the waitlist and provided his mobile number to the hostess for this purpose. The effect: Plaintiff received a confirmatory text message from the restaurant after the hostess manually typed in all ten digits of his phone number. Cause: The restaurant cleared, a table meeting Plaintiff's specifications become available, and the hostess was ready to seat Plaintiff. The effect: The hostess notified Plaintiff via text message that his table was ready.

The text messages were personal to Plaintiff and his dining position, undercutting the argument that the messages were sent "automatically." The idea that the hostess manually entered his phone number and the application ran "automatically" without human input from restaurant employees on table availability and assignment defies common sense. One could envision the chaos that would ensue if such a system existed and ran "automatically" without any regard for when restaurant employees were actually ready and available to serve guests.

The asserted claims against Wingmen are not viable and no amendment can save his flawed complaint. Plaintiff's complaint should be dismissed with prejudice.

1    **I.      THE MESSAGE FROM WINGMEN WAS NOT MARKETING**

2          **A.      <u>Plaintiff Cannot Look-Through The Message To Find A Marketing Purpose</u>**

3          Plaintiff's entire argument as to why the confirmation text message is marketing hinges on

4    looking far beyond the content of the message and searching far and wide for a marketing

5    purpose—any marketing purpose that may be found no matter how far removed or speculative it

6    may be.  That is not the law, however.  The law is clear that if "the *language* of the confirming

7    texts does not contain marketing or promotional information," the message is not marketing.

8    *Holt v. Redbox Automated Retail, LLC*, No. 11CV3046 DMS (RBB), 2013 WL 12114789, *4

9    (S.D. Cal. June 20, 2013) (emphasis added).

10         Plaintiff's attempt to distinguish *Redbox* is unavailing.  As Plaintiff recognizes, *Redbox*

11   involved a "single message" confirming an "explicit request."  Opp., Dkt. 29 at 19:21–23.  This

12   case also involves a single message confirming Plaintiff's explicit request to be placed on the

13   waitlist.  While Plaintiff tries to distinguish *Redbox* further by stating that "[t]he message only

14   stated that the consumers were unsubscribed and provided a link for more information, likely

15   pertaining to the opt-out request" (Opp., Dkt. 29 at 19:25–26), that is not the end of the analysis.

16   Rather, like the arguments Plaintiff makes here, the *Redbox* plaintiffs argued that "the texts

17   referenced a link to Defendant's website and solicited Plaintiffs to visit the website. According to

18   Plaintiffs, <u>if the consumer clicks on the link it takes the consumer to Defendant's website where</u>

19   <u>Defendant offers deals, movies and games, among other things</u>." *Id.* at *4 (emphasis added).  The

20   court rejected this argument, finding that a confirmatory message is not converted into a

21   marketing message "based on what a consumer would find if he or she pursued the link." *Id.*

22         That is precisely what Plaintiff's entire case is based on: what would happen if he pursued

23   the link.  As alleged in the complaint, the message from the Chino Hills restaurant simply said

24   "BWW: Check your place in line: <u>https://yelp.to/qTKq/ZzS6f90K9F</u> We will text you when your

25   table is ready."  Compl., ¶ 20.  There is no marketing content in the message whatsoever and

26   Plaintiff's complaint and opposition make it abundantly clear that the only possible way to

27

28

1  manufacture marketing content is by looking through the message.[2]

2  However, none of the cases Plaintiff relies on support such an approach.  In fact, the two

3  cases upon which Plaintiff places primary reliance for his position that the messages are

4  marketing are inapplicable because both involved text messages where an app was promoted **in**

5  **the text of the message received by the consumer**.  *See Pedro-Salcedo v. Haagen-Dazs Shoppe*

6  *Co., Inc.*, No. 5:17-CV-03504-EJD, 2017 WL 4536422, at *2 (N.D. Cal. Oct. 11, 2017) (text

7  message specifically stated "Download our app here"); *Herrick v. QLess*, 216 F. Supp. 3d 816,

8  817 (E.D. Mich. 2016) (text message specifically stated "Android users: Try our QLess app to see

9  your wait in real time, control when you get served & find more places with no lines—

10  http://tiny.qless.com/androidApp.").  Further, in *Herrick*, the text message *itself* encouraged the

11  user to "find more places with no lines."

12  Plaintiff attempts to distinguish the multitude of cases recognizing that whether a message

13  is transactional or advertising must be decided from the face of the message on the basis that the

14  cases arise in the fax context.[3]  This position is misguided.  The TCPA regulates advertisements

15  for both telephone and telephone facsimile machines, thus it is logical and appropriate that a court

16  would look to fax cases to inform a telephone call case, and vice versa.  At bottom, a link by itself

17  does not transform an otherwise permissible, confirmatory message into a marketing message.[4]

18
19  [2] Plaintiff asserts that the text message "advertised" "BWW's Blazin' Rewards app and rewards program."  Opp., Dkt. 29 at 13:22.  He further claims that Defendants made an "effort to bribe
20  plaintiff into participation in the loyalty program."  Opp., Dkt. 29 at 16:2–3; 16:2-4.  This appears to be the result of a copy and paste from Plaintiff's other opposition briefs, since the text message
21  from the Chino Hills restaurant location owned by Wingmen makes no mention of a rewards, loyalty, or membership program.  *See* Compl. ¶ 20.

22  [3] Curiously, while faulting Wingmen for citing fax cases, Plaintiff relies on several fax cases to support his position.  For example, in *Stryker*, the fax offered physicians a free dinner and
23  seminar about a medical product promoted by the defendant.  The court concluded that it was not clear whether the fax was an advertisement on its face and that content about the seminar may be
24  relevant.  *See Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 492
25  (W.D. Mich. 2014).  Here, the face of the text messages alone demonstrate that they were not marketing.

26  [4] In perhaps the best example of how far afield Plaintiff will go in an attempt to state a claim, he
27  argues that to "download the apps, Plaintiff would have to divulge even more of his information and accede to Defendants' terms of use which contain copious provisions modifying the parties'

28

1

### B. The Confirmatory Text Message Was Not Marketing

2      It is well accepted in the Ninth Circuit that messages confirming a transaction initiated by

3  the plaintiff are not marketing. *See Aderhold v. car2go N.A. LLC*, 668 F. App'x 795, 796 (9th

4  Cir. 2016); *MacKinnon v. Hof's Hut Restaurants*, No. 2:17-CV-01456-JAM-DB, 2017 WL

5  5754308 (E.D. Cal. Nov. 28, 2017); *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855,

6  at *5 (W.D. Wash. July 12, 2017); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO,

7  2015 WL 7454260 (N.D. Cal. Nov. 24, 2015).

8      *MacKinnon* is virtually indistinguishable from this case, yet Plaintiff argues that

9  *MacKinnon* is inapplicable because the message Plaintiff received "did not simply confirm a

10  reservation or notify Plaintiff of his place in line." Opp., Dkt. 29 at 13:16–17. Plaintiff is wrong.

11  Here, as in *MacKinnon*, the message confirmed a request to dine at the restaurant and provided

12  information to facilitate that request. Plaintiff is also wrong that the text "implore[d] Plaintiff to

13  download the" Nowait app. Opp., Dkt. 29 at 14:8–9. The text does not even mention the app, let

14  alone plead with Plaintiff to download it. Compare with *Herrick*, 216 F. Supp. 3d at 817

15  ("Android users: Try our QLess app…"). Rather, Plaintiff was merely given an option to check

16  his place in line, further facilitating his request to be notified about table availability. This is no

17  different than *MacKinnon* where the optional link displayed the restaurant's nightly specials to

18  facilitate the guest's dining experience. In fact, displaying nightly specials to purchase is more

19  akin to marketing than an option to remotely monitor one's place in line. *MacKinnon* thus

20  compels the conclusion that the message here was not marketing.

21      Plaintiff's attempt to distinguish *Aderhold*, 668 F. App'x 795 and *Daniel*, 2015 WL

22  7454260 is unequally unavailing. According to Plaintiff, these cases are distinguishable because

23  they involved plaintiffs "completing registration in a program that the plaintiffs had voluntarily

24

25  legal relationship, affecting a user's ability to bring claims, and permitting Defendants to send
   them certain text messages." Opp., Dkt. 29 at 15:26–16:1. *See also id.* 16:2:20. Even if this

26  were true, this has nothing to do with the text message he requested and received about the

27  waitlist. Moreover, Plaintiff does not even allege that he downloaded the app (because he did
   not), and therefore this discussion is entirely irrelevant, not to mention speculative.

28

1    sought to join." Opp., Dkt. 29 at 15:5–6.  This is a distinction without a difference.  In *Aderhold*,

2    Plaintiff sought to join a car share membership, in *Daniel*, plaintiff sought to join a rewards

3    program, and here, Plaintiff sought to join a restaurant waitlist.  In each of these cases, the

4    plaintiff, Meeks included, voluntarily provided their telephone numbers to join the program and

5    thereafter received messages consistent with their requests.  In *Aderhold* and *Daniel*, like here, the

6    messages facilitated a transaction initiated by the plaintiff and the courts held they were not

7    marketing.

8            **C.       The Text Message Was Not "Dual-Purpose" Because It Did Not Have A**

9                       **Marketing Component**

10           Recognizing the weakness of his position, Plaintiff resorts to arguing that the waitlist text

11   message was "dual-purpose"—both informational and marketing—and therefore constitutes

12   marketing under the TCPA.  In order to be "dual-purpose," messages must have a "marketing

13   component" in that they typically encourage "future purchasing activity" under the guise of

14   customer service.  *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012).  The FCC

15   has provided examples of dual-purpose messages: "calls from mortgage brokers to their clients

16   notifying them of lower interest rates, calls from phone companies to customers regarding new

17   calling plans, or calls from credit card companies offering overdraft protection to existing

18   customers."  *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18

19   F.C.C. Rcd. 14014, 14098 (2003).  By contrast, the message here does not encourage any future

20   purchase at the restaurant or otherwise.  Rather, it merely confirms a transaction already in

21   progress: being waitlisted at the restaurant.

22           Accordingly, the cases Plaintiff relies on are inapplicable.  *See Flores v. Access Ins. Co.*,

23   No. 215CV02883CASAGRX, 2017 WL 986516, at *8 (C.D. Cal. Mar. 13, 2017) (message dual-

24   purpose where it notified plaintiff that insurance was about to lapse and encouraged making a

25   payment to renew policy); *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL

26   431148, at *3 (N.D. Cal. Feb. 2, 2015)  (message dual-purpose where it offered 10% off a future

27   purchase if plaintiff confirmed her opt-in); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 738

28

1   (N.D. Ill. 2014) (call dual-purpose where caller tried to sell plaintiff additional products under

2   guise of verifying her address).  It is apparent that the message here is not dual-purpose—it

3   merely served to confirm Plaintiff's request for a table and facilitate Plaintiff's own request.

4          There is no basis to conclude that the message here required "prior express written

5   consent" because it lacked a marketing purpose or component.  Plaintiff admits that he has no

6   claim if the message is not marketing, as he concedes that he provided prior express consent by

7   acknowledging that "in order to be notified when he table was ready[,] [h]e provided his number

8   orally to the host."  Opp., Dkt. 29 at 11:19-23; 24:8–9.  Since the text message was not marketing

9   and Plaintiff voluntarily provided his mobile number, Plaintiff provided express consent to be

10  contacted about his request for a table and his TCPA claims fail as a matter of law.

11  **II.   PLAINTIFF'S CLAIM THAT AN ATDS WAS USED FAILS ON ITS FACE**

12         **A.    Plaintiff's ATDS Allegations Are Contradicted By The Alleged Facts**

13         Plaintiff is correct that a system with the capacity to dial numbers without human

14  intervention is an ATDS.  Opp., Dkt. 29 at 11:9-20.  Plaintiff is also correct that a plaintiff may

15  plead facts that support an inference that a system has the requisite capacity and that the text

16  messages were not sent with human intervention.  Opp., Dkt. 29 at 11:21-25.  But Plaintiff fails to

17  plead a single *fact* supporting an inference that the waitlist application had the requisite capacity

18  to autodial.  In fact, the sum total of Plaintiffs ATDS allegations are as follows:

- Defendant sent the text messages "an automatic telephone dialing system
  ("ATDS")."  Compl. ¶ 32.
- "Customers do not receive text messages from restaurants directly but
  automatically through Yelp/Nowait's platform."  Compl. ¶ 33
- "Defendants' system uses software that can store a database of cellphone numbers
  and then automatically send text messages to those stored telephone numbers"
  Compl. ¶ 34

26  *See* Opp., Dkt. 29 at 10:7-14.  These conclusory allegations are wholly unsupported by any of the

27  factual allegations, which are that Plaintiff visited two Buffalo Wild Wings locations, gave his

28

phone number to the hosts in connection with his request for a table, and received two text messages.[5]  While Plaintiff prefers to conflate the two text messages he received, in the hopes that the Court will not notice, the two text messages are distinct and should be considered separately.

As Plaintiff admits, the first text message confirming his place on the waitlist was sent contemporaneously with him providing the hostess his full telephone number and the hostess *manually keying all ten digits into the Nowait application*.  Compl. ¶ 20  As such, **there is no way that the initial confirmatory text message could have been automated or sent with an "autodialer."**  Any other conclusion defies common sense and the plain allegations of Plaintiff's complaint.  Since the initial text message Plaintiff alleged received was not sent with an autodialer, the TCPA does not apply and could not have been violated.  47 U.S.C. § 227(b)(1)(a); 47 C.F.R. § 64.1200(a)(1) (regulating automated telephone calls sent with a prerecorded voice or by an "automatic telephone dialing system").

The second and last text message was sent contemporaneously with Plaintiff's table being ready and the restaurant being prepared to seat him.[6]  Compl. ¶¶ 19, 26.  This too shows that an autodialer was not used to send these message because it was uniquely tailored to Plaintiff and his position on the waitlist.  Even if the Court is persuaded that Plaintiff has sufficiently pled an autodialer with respect to this second text message, the message is **clearly devoid of any marketing purpose whatsoever**.  It merely said "his table was ready." *Id.* ¶ 26.  Not even Plaintiff can argue that this second message constituted marketing.  Automated transactional text messages under the TCPA require only "prior express consent," which was easily satisfied when Plaintiff voluntarily provided his mobile number to the hostess.  *See Van Patten v. Vertical*

---

[5] While Plaintiff repeatedly talks about "spam" messages sent "en masse," he alleges only two text messages from each restaurant for each of his two visits.  He does not allege that he received a single text message after leaving the restaurants, debunking his conclusory allegations that the app had the capacity to both store numbers and automatically generate messages.

[6] If Plaintiff's complaint is not dismissed, Wingmen intends to file a motion for summary judgment detailing how restaurant employees manually input data into the waitlist application and send individual text messages to customers on the waitlist.

1    *Fitness Grp., LLC*, 847 F.3d 1037, 1045 (9th Cir. 2017) ("a consumer consents to contact for

2    transaction-related communications when the consumer provides his or her phone number to the

3    caller").  So even if the second text message was sent with an "autodialer" (which it was not),

4    Plaintiff's TCPA claims still fail.  On this basis alone, Wingmen's motion to dismiss should be

5    granted.

6    ### B.       Plaintiff's Allegations Present Mere Possibilities

7              Plaintiff also argues that his complaint shows that he was autodialed because he alleged

8    that the phone numbers from which the messages were sent did not connect to a live person at the

9    restaurants.  Opp., Dkt, 29, at 7:22–23; Compl. ¶ 20 ("If called, the telephone number from which

10   the text message was sent will disconnect the caller.").  Plaintiff presents a mere possibility; he

11   does not present a plausible ATDS theory.

12             Plaintiff's allegations establish that Nowait is an application that allows the hostess to

13   communicate with customers via *text message*.  Compl. ¶¶ 14, 19, 20, 26.  Plaintiff does not

14   allege that the Nowait application can send or receive *voice* messages.  Plaintiff also does not

15   allege that he attempted to text the phone number from which he received the messages.  The fact

16   that he was unable to reach the hostess by *calling* the phone number that texted him does not

17   preclude the likelihood that if he had *texted* the phone number he would have received a

18   personalized response from the hostess.[7]  Plaintiff's allegations merely support the inference that

19   the application was not designed to take voice calls, not that an ATDS was used to call him.

20             This is not enough to state a plausible claim and his claim should be dismissed.  *See*

21   *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (if a complaint pleads facts "that are merely

22   consistent with a defendant's liability, it stops short of the line between possibility and

23   plausibility of entitlement to relief"; "where the well-pleaded facts do not permit the court to infer

24   more than the mere possibility of misconduct, the complaint has alleged—but it has not

25   show[n]—that the pleader is entitled to relief") (internal citations omitted); *Bell Atlantic Corp. v.*

26   *Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief

27   
28   

---

[7] *See* supra note 7.

1   above the speculative level," requiring the complaint "contain something more than a statement

2   of facts that merely creates a suspicion of a legally cognizable right of action"); *Starr v. Baca*,

3   652 F.3d 1202, 1216 (9th Cir. 2011) ("the factual allegations that are taken as true must plausibly

4   suggest an entitlement to relief, such that it is not unfair to require the opposing party to be

5   subjected to the expense of discovery and continued litigation").

6           **C.**    **ATDS Cases Upon Which Plaintiff Relies Show the Futility of His Position**

7         Plaintiff's cases do not warrant a different conclusion on the ATDS question.  In *Flores v.*

8   *Adir International*, Flores alleged that he received *identical* text messages on four separate

9   occasions, despite his repeated opt-out requests.  685 F. App'x. 533, 534 (9th Cir. 2017).  The

10   court noted that these *identical* texts were generically formatted, appeared to be scripted, and

11   were impersonal to Plaintiff.  *Id.* at 533.  Similarly, in *Maieri v. J.C. Penney Corp., Inc.*, No.

12   13cv01636-IEG (DHB), 2013 WL 3006415 (S.D. Cal. Jun. 13, 2013), the plaintiff received a

13   generic and impersonal message, imploring her to join J.C. Penney's texting program.  *Id.* at *1.

14         *Flores* and *Maieri* are easily distinguishable because the text messages Plaintiff received

15   were not identical and were specifically directed at him, his place in line, and timed according to

16   his position on the waitlist.  Compl. ¶ 20 ("We will text **you** when **your table** is ready."); ¶ 26

17   (text message notified plaintiff "this **his** table was ready") (emphasis added to both).  Accordingly,

18   they were tailored to Plaintiff's unique circumstances and were, in fact, personal to him.[8]

19         The case of *Mogadam v. Fast Eviction Serv.* only supports the inference that an ATDS

20   was not used to text Plaintiff.  In that case, the plaintiff alleged he received an *unsolicited* generic

21   message out of the blue from a short code regarding eviction services. No. SACV 14-01912 JVS,

22   2015 WL 1534450, at *1 (C.D. Cal. Mar. 30, 2015).  But the text messages here were hardly "out

23   of the blue."  They were sent at Plaintiff's request when he provided his mobile number to the

---

[8] Plaintiff's digression about long and short code messages is irrelevant.  Opp., Dkt. 29 at 7:26–
9:3.  It is not alleged in the complaint and Plaintiff cannot use his opposition brief to replead his
complaint.  *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998)
("The 'new' allegations contained in the [plaintiff's] opposition motion, however, are irrelevant
for Rule 12(b)(6) purposes.")  Moreover, this argument is based on speculation, not facts.  It is a
red herring to confuse the Court and should be disregarded.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   hostess to be placed on the waitlist.  Plaintiff received a confirmation message directly relating to

2   his request for a table immediately after providing his phone number to the hostess and then a

3   subsequent text message when his table was ready.  As such, the facts here compel the *opposite*

4   conclusion—that the restaurant hostess manually initiated the text messages.

5        Plaintiff also cites *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017).  In *Holt*,

6   the court noted that plaintiff's allegations must "raise an inference that an ATDS was

7   utilized."  *Id.* at 1027 (quoting *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 WL

8   1169365, at *4 (N.D. Cal. Mar. 24, 2016)).  These allegations include "the content of the message,

9   the context in which it was received, and the existence of similar messages."  *Id.*  Notably, in *Holt*,

10  plaintiff was sent an impersonal message from a short code imploring her to update her Facebook

11  account, but she did not have a Facebook account.  The court's finding that an ATDS may have

12  been used to send the message hinged on the fact that "Holt had no reason to be in contact with

13  Facebook."  *Id.* at 1030.  Thus, these facts raised an inference that Holt automatically received the

14  text messages once the account associated with her phone number crossed an activity threshold

15  set by Facebook's software.  Here, Plaintiff had *every* reason to be in contact with the Chino Hills

16  restaurant since he specifically requested to be texted.  He knew full well he would receive text

17  messages when he provided his phone number and asked to be waitlisted.  Further, unlike *Holt*,

18  the messages were tied to **manually driven, in-person events** at the restaurant and were

19  "targeted" to Plaintiff specifically.  *Cf. Holt*, 240 F. Supp. 3d at 1029-30.

20       In *Meyer v. Bebe Stores, Inc.*, plaintiff provided her phone number to a Bebe store

21  employee "believing it was necessary to complete an in-store return/purchase transaction and for

22  no other purpose."  No. 14-cv-00267-YGR, 2015 WL 431148, at *1 (N.D. Cal. Feb. 2, 2015).

23  Subsequently, she received an *unsolicited* text message urging her to opt in to Bebe's texting

24  program.  *Id.*  The alleged facts in *Meyer* were sufficient to support an inference that the generic

25  text messages were automatically sent *en masse* to customers who had unwittingly provided their

26  phone numbers in conjunction with an entirely unrelated transaction.  The alleged facts here do

27  not support an inference the text messages were sent *en masse*.  Mass text messages could ***not***

28

1   have been sent to hundreds or thousands of restaurant guests at the same time because the text

2   messages were specific to an individual guest and their individual place on the waitlist.  After all,

3   the text messages must have been particularized if the guest could "check [their] place in line."

4   Compl. ¶¶ 14, 20.

5          Equally unavailing is Plaintiff's reliance on *Johnson v. Yahoo!, Inc.*, Nos. 14 CV 2028,

6   14 CV 2753, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014) and *Wick v. Twilio, Inc.*, No. 2017 WL

7   2964855 (W.D. Wash., Jul. 12, 2017).  In *Johnson*, there was evidence that the system had the

8   capacity to store, cross-reference, and pull phone numbers from its database for the purpose of

9   automatically texting consumers.  Similarly, in *Wick*, the complaint plausibly alleged that the

10  platform stored phone numbers to automatically build and send text messages via a computer

11  program.  Plaintiff's uniquely personal and uniquely timed messages belie his assertion that the

12  text messages were sent automatically by the Nowait application.  Moreover, Plaintiff's assertion

13  that he had to provide his phone number *again* at the *second* restaurant he visited (Chino Hills)

14  belies his assertion that the system *stores* the phone numbers.  Plaintiff alleges no facts suggesting

15  that the Nowait application had to the capacity to store and automatically send text messages

16  without human intervention.

17         Plaintiff also attempts to distinguish *Duguid*, 2016 WL 1169365, at *5 by claiming (1)

18  "The facts in *Duguid* did not show a large-scale marketing campaign like the one alleged in this

19  case, where potentially every customer entered into Defendants' wait list was spammed with

20  marketing messages"; and (2) "the content of the text messages, the intended recipients, and the

21  timing of the transmission were all predetermined by Nowait's software."  Opp., Dkt. 29 at 17:1-7.

22  But Plaintiff has not alleged any facts suggesting a large-scale "marketing" campaign, or that any

23  customer's phone number was stored or "spammed" with marketing messages.  Instead,

24  Plaintiff's alleges that he received two contemporaneously timed messages directly related to his

25  request for a table and based on circumstances present at the restaurant.  Plaintiff does not allege

26  or explain how the Nowait application could have predetermined the *content* of the text messages

27  or how the Nowait application could have timed the transmission of messages to an **in-person**

28

1    **event** at the restaurant without human intervention.

2        In short, none of the cases Plaintiff cites warrant a different conclusion that the one

3    necessitated by the alleged facts—the text messages were not sent with an autodialer.

4        **D.    Plaintiff's Other ATDS Arguments Are Not Persuasive**

5        Plaintiff argues in opposition that he received the initial text message "far faster than the

6    hostess could physically type out the message." Opp., Dkt. 29 at 6:19-20. But the definition of

7    an ATDS does not require that the hostess manually type the content of the text message. That

8    the restaurant may have standardized the content of its confirmation message does not change the

9    fact that the message was *manually initiated* by the hostess in direct response to Plaintiff's dining

10   request. **The important allegation here is that the hostess had to manually type all ten digits**

11   **of plaintiff's phone number in order to initiate a text message confirming Plaintiff's spot on**

12   **the waitlist.** Compl. ¶ 20. That is the anti-thesis of an autodialer.

13       Next, Plaintiff argues that the app sends text messages "automatically, as soon as hostess

14   [sic] enters the customer phone number into the waitlist." Opp., Dkt. 29 at 12:28-13:2. Despite

15   Plaintiff's creative use of the word "automatically" here, what Plaintiff describes is actually the

16   definition of human intervention. Under Plaintiff's strained interpretation, every *manually*

17   *initiated* text message can be considered to be sent "automatically" as soon as the sender types in

18   the recipient's ten digit phone number and hits "send." This is clearly not the definition of an

19   autodialer and is contrary to well-established case law stating otherwise. *See* Motion to Dismiss,

20   Dkt. 24 at 14:19–15:13.

21       For example, courts have held that a single click to dial (not a ten digit dial) is sufficient to

22   demonstrate that an autodialer was not used to generate a call or text message. *See Arora v.*

23   *Transworld Sys. Inc.*, No. 15-CV-4941, 2017 WL 3620742 at *3 (N.D. Ill. Aug. 23, 2017)

24   (system was not an ATDS where agent clicked a single button to initiate call); *Schlusselberg v.*

25   *Receivables Performance Mgmt., LLC*, 2017 WL 2812884 (D. N.J. June 29, 2017) (same); *Smith*

26   *v. Stellar Recovery, Inc.*, No. 2:15-CV-11717, 2017 WL 955128, at *3 (E.D. Mich. Mar. 13,

27   2017) (same); *Pozo v. Stellar Recovery Collection Agency, Inc.*, No. 8:15-CV-929-T-AEP, 2016

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

1    WL 7851415, at *3 (M.D. Fla. Sept. 2, 2016) (same); *Strauss v. CBE Grp., Inc.*, 173 F. Supp. 3d

2    1302, 1311 (S.D. Fla. 2016) (same).  Given that a single click is sufficient to take a platform

3    outside the realm of an ATDS, it must follow then that having to **manually input all ten digits of**

4    **phone number** must be too.

5            In conclusion, Plaintiff has failed to allege a single fact supporting the inference that the

6    Nowait app has the capacity to send messages without human intervention.  His allegations

7    actually compel a contrary inference. *See Maier*, 2013 WL 3006415, at *4 ("[W]here factual

8    allegations made in a plaintiff's complaint 'are unsupported by any specific facts and appear less

9    likely than the alternate inference, namely that plaintiff received a customer specific text ...

10   through human agency, rather than an ATDS' the pleading standard for this [ATDS] element is

11   not met.") (quoting *Gragg v. Orange Cab Co., Inc.*, No. C12-0576RSL, 2013 WL 195466, at *2

12   (W.D. Wash. Jan. 17, 2013)); *Holt*, 240 F. Supp. 3d at 1027 (Plaintiff's allegations "can also

13   indicate the presence of human intervention that refutes the use of an ATDS.").

14           As such, discovery is unnecessary and would be a waste of time because Plaintiff's

15   allegations already make clear that the text messages Plaintiff received could not have been sent

16   with an autodialer.  Since Plaintiff fails to plead that the text messages were sent with an ATDS,

17   his TCPA complaint should be dismissed. *See Derby v. AOL, Inc.*, No. 15-CV-00452-RMW,

18   2015 WL 3477658, at *4 (N.D. Cal. June 1, 2015) (dismissing TCPA claim where allegations of

19   complaint precluded need for discovery on autodialer issue); *McKenna v. WhisperText*, No. 5:14-

20   CV-00424-PSG, 2015 WL 428728, at *4 (N.D. Cal. June 1, 2015) (same).

21   **III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE**

22           The complaint should be dismissed with prejudice because leave to amend would be futile.

23   Plaintiff cannot allege new facts to state a claim without expressly contradicting the allegations in

24   his complaint. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990); *see also Cohen*

25   *v. Berkley Nat'l Ins. Co.*, No. 217CV00057GMNGWF, 2017 WL 3925418, at *4 (D. Nev. Sept. 6,

26   2017) ("To allow Plaintiffs to amend their Complaint to allege facts that are in direct

27   contradiction to the facts alleged . . . would be futile."); *Swearingen v. Healthy Beverage, LLC*,

28

No. 13-CV-04385-EMC, 2017 WL 1650552, at *5 (N.D. Cal. May 2, 2017) (dismissal with prejudice proper where amendment would be "squarely inconsistent with a prior allegation").

## CONCLUSION

Plaintiff's complaint should be dismissed for two primary reasons (1) the messages were transactional and sent with his express consent and (2) they were not sent with an autodialer, and therefore the TCPA does not apply.

Plaintiff cannot plausibly allege that he received a marketing message from Wingmen because the face of the message confirming his place on the waitlist is devoid of marketing. Plaintiff's strained attempts to identify a marketing purpose—no matter how speculative and attenuated to the message received—are improper and should be rejected outright. The alleged facts show that the messages were transactional and sent at Plaintiff's own request. Because Plaintiff provided his mobile number to the hostess in order to be placed on the waitlist and notified when his table was ready, he consented to receive the messages and thus, his TCPA claims fail on their face.

Plaintiff's TCPA claims also fail because his complaint allegations make clear that an ATDS did not initiate the text messages. The messages were uniquely personal to him and timed to his specific dining request and place on the waitlist. The hostess manually keyed in all ten digits of his phone number in order to send the first message confirming Plaintiff's status on the waitlist. The alleged facts also show that the subsequent message notifying him that his table was ready was manually initiated by the hostess, according to the restaurant's table and server availability and when the hostess was ready to seat him. The only logical inference that can be

DATED:  February 6, 2018                    MANATT, PHELPS & PHILLIPS, LLP


By: /s/ *Christine M. Reilly*
    Christine M. Reilly
    Attorneys for Defendant
    Wingmen V, LLC

**CERTIFICATE OF SERVICE**

I, **Christine M. Reilly**, declare:

I am employed in Los Angeles, California.  I am over the age of eighteen years and not a party to this action.  My business address is MANATT, PHELPS & PHILLIPS, LLP, 11355 West Olympic Boulevard, Los Angeles, CA 90064.  On the date set forth below, I served the within documents:

**REPLY IN SUPPORT OF DEFENDANT WINGMEN V'S MOTION TO DISMISS**

on the interested parties in this action addressed as follows:

**SEE ATTACHED SERVICE LIST**

☑        **(BY ELECTRONIC SERVICE)** Using CM/ECF, I caused an electronic version of the document(s) to be sent to the person)(s) listed below.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 28, 2018**, at Los Angeles, California.

/s/ *Christine M. Reilly*
**Christine M. Reilly**

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

1

## SERVICE LIST

2

| | |
|---|---|
| Justin Kachadoorian, Esq.<br>Alexandria R Kachadoorian, Esq.<br>Anthony J Orshansky, Esq.<br>CounselOne PC<br>9301 Wilshire Boulevard, Suite 650<br>Beverly Hills, CA 90210<br>Telephone:  (310) 277-9945<br>Facsimile:  (424) 277-3272<br>Email:  justin@counselonegroup.com<br>          Alexandria@counselonegroup.com<br>          Anthony@counselonegroup.com<br><br>*Attorneys for Plaintiff Marche Meeks* | Anahit Tagvoryan, Esq.<br>Harrison Maxwell Brown, Esq.<br>Safia G. Hussain, Esq.<br>Blank Rome LLP<br>2029 Century Park East, 6th Floor<br>Los Angeles, CA 90067<br>Telephone:  (424) 239-3400<br>Facsimile:  (424) 239-3434<br>Email:  atagvoryan@blankrome.com<br>          hbrown@blankrome.com<br>          shussain@blankrome.com<br><br>*Attorneys for Defendants Buffalo Wild Wings, Inc. and Blazin Wings, Inc.* |
| Brian Adair Sutherland, Esq.<br>Ashley Lynn Shively, Esq.<br>Reed Smith LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA  94105<br>Telephone:  (415) 543-8700<br>Facsimile:  (415) 391-8269<br>Email:  bsutherland@reedsmith.com<br>          ashively@reedsmith.com<br><br>*Attorneys for Defendants Yelp Inc. and Nowait, Inc.* | |

319907575.1

MANATT, PHELPS &<br>PHILLIPS, LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES