1  ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
   anthony@counselonegroup.com
2  ALEXANDRIA KACHADOORIAN, Cal. Bar No. 240601
   alexandria@counselonegroup.com
3  JUSTIN KACHADOORIAN, Cal. Bar No. 260356
   justin@counselonegroup.com
4  COUNSELONE, P.C.
   9301 Wilshire Boulevard, Suite 650
5  Beverly Hills, California 90210
   Telephone: (310) 277-9945
6  Facsimile: (424) 277-3727

7  Attorneys for Plaintiff MARCHE MEEKS,
   on behalf of himself and others similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| MARCHE MEEKS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUFFALO WILD WINGS, INC., a Minnesota corporation; BLAZIN WINGS, INC., a Minnesota corporation; YELP, INC., a Delaware corporation; NOWAIT, INC., a Delaware corporation; WINGMEN V, LLC, a Washington limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 4:17-cv-07129-YGR<br><br><u>CLASS ACTION</u><br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: March 19, 2018<br>Time: 2:00 p.m.<br>Courtroom: 1 (4th Floor)<br>Judge: Hon. Yvonne Gonzalez Rogers |

The parties, Plaintiff Marche Meeks ("Plaintiff") and Defendants Buffalo Wild Wings, Inc., Blazin Wings, Inc., Yelp Inc. for itself and as successor in interest to NoWait, Inc.,[1] and Wingmen V, LLC (collectively, "Defendants"), met and conferred on March 5, 2018, pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the Standing Order for All Judges of the Northern District of California, Civil Local Rule 16-9, and this Court's January 30, 2018 Notice Resetting Case Management Conference [ECF No. 27], and hereby submit their joint report for the Court's consideration:

**1.     Jurisdiction and Service**

Plaintiff brings two claims for relief against Defendants under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (Ntc. of Removal [ECF No. 1], Ex. B.)  The Notice of Removal states that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 based upon the presence of a federal question and also has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (*Id.* at ¶¶ 5-7.) Plaintiff has served all parties and they have appeared.  Plaintiff and Defendants agree that the Court has personal jurisdiction over Defendants.

**2.     Facts**

PLAINTIFF: This action arises from text messages Plaintiff received while waiting for a table at the restaurant Buffalo Wild Wings ("BWW") on two separate occasions.  Plaintiff received the first disputed text message in or around July 2017, when he visited a BWW restaurant in Sherman Oaks, California owned by Blazin Wings, a wholly owned subsidiary of BWW.  The hostess took down Plaintiff's telephone number to notify him when his table was ready.  Complaint, ¶ 13.  Shortly thereafter Plaintiff received a text message that read substantially as follows: "BWW: Check your place in line: http://n0wa.it/a~R26Ph[.]  While you wait download our Blazin Rewards app for points & free wings!  Reply STOP to end msgs[.]" The link in the text message directed to a website maintained by Nowait, which advertises

---

[1] The parties refer to Yelp Inc. and Nowait, Inc. collectively as "Yelp" unless otherwise indicated.

Nowait's app. The advertisement read, "To view your place in line download the app. … With the Nowait app, you can get in line at this very restaurant (and thousands of others) from home, never needing to wait around the lobby for dinner again!" *Id.*, ¶ 16.

Plaintiff received the second disputed text message on September 4, 2017, when he visited a BWW restaurant in Chino Hills, California owned by Wingmen V, LLC. Again there was a wait and the hostess recorded his telephone number to notify him when his table was ready. Soon thereafter Plaintiff received a text message that read in part as follows: "BWW: Check your place in line: https://yelp.to/qTKq/ZzS6f9OK9F[.] We will text you when your table is ready. The hyperlink directed to a website imploring customers to "Download the Yelp App" and advertising that "Buffalo Wild Wings is one of the 1000s of restaurants that use Yelp to manage their waitlists. … [W]ith Yelp on your phone, you can save time and join the waitlist online via app, rather than standing in line or calling the restaurant." *Id.*, ¶ 21.

Plaintiff alleges that Defendants used an automatic telephone dialing system to send thousands of similar text messages to customers who did not give Defendants their prior express written consent.

<u>DEFENDANTS</u>: In July 2017, Plaintiff visited a Buffalo Wild Wings restaurant in Sherman Oaks, owned by Defendant Blazin Wings. Compl. ¶ 13. There was a wait, and Plaintiff voluntarily provided his mobile number to the hostess to contact him. *Id.* ¶ 3. Promptly thereafter, he received a text message confirming his request for a table and allowing him the option to check his place in line and "another text message notifying him that his table was ready." *Id.* ¶¶ 14, 19.

On September 4, 2017, Plaintiff visited another Buffalo Wild Wings restaurant in Chino Hills, California, this time owned by Defendant Wingmen and "again there was a wait." *Id.* ¶ 20. As he had done previously, Plaintiff voluntarily provided his mobile number to the hostess in order to be added to the waitlist and notified when a table was ready. *Id.* In accordance with his explicit request to be added to the waitlist, Plaintiff received a confirmatory text message stating:

**BWW: Check your place in line: https://yelp.to/qTKq/ZzS6f9OK9F[.] We will text you when your table is ready.**

*Id.* The message confirmed that Plaintiff was in line and offered plaintiff the option to check his progress on the waitlist. The hyperlink in the text message, if clicked, allowed guests to download the Yelp/Nowait app, which manages the restaurant's waitlist, and would have allowed Plaintiff to check his place on the list while he waited for a table. *Id.* ¶ 21. Plaintiff does not allege that he downloaded the Yelp app or that he opted to check his place in line. When his table was ready, Plaintiff received a second and final text message "notifying him that his table was ready." Compl. ¶¶ 19, 26.

Plaintiff does not allege that anyone else received the same text messages he received relating to his request for a reservation to dine at the restaurants, or that he received any text messages other than those he received while waiting for his requested table.

### 3. **Legal Issues**

PLAINTIFF: The TCPA prohibits businesses from using an automatic telephone dialing system to place telemarketing or advertising calls to consumers' cellular telephones without the consumers' prior express written consent. *See* 47 U.S.C. § 227(b)(1) (stating that "[i]t shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service"); 47 C.F.R. § 64.1200(a)(2) (explaining that, after October 16, 2013, "prior express consent" as used in subsection (b)(1)(A)(iii) of the TCPA means "prior express written consent" for all telemarketing or advertising calls). Text messages "qualif[y] as . . . 'call[s]' within the compass of [the TCPA]." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

The subject messages Plaintiff received constitute advertising or telemarketing because they encourage consumers to download Defendants' apps and use Defendants' services.

Plaintiff further contends that, under the relevant regulation, "prior express written consent means an agreement, in writing, bearing the signature of the person called" that "include[s] a clear and conspicuous disclosure informing the person signing that . . . [he or she] authorizes the seller to deliver . . . telemarketing calls using an automatic telephone dialing system," as well as a "clear and conspicuous disclosure" stating that he or she "is not required to

sign the agreement . . . as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8). Plaintiff did not sign a document containing these disclosures.

DEFENDANTS: Defendants contend that the text messages at issue do not constitute telemarketing because the messages directly relate to a specific commercial transaction Plaintiff had initiated at the restaurants by virtue of his request to be placed on the waitlist to dine at the restaurants. *See Aderhold v.car2go N.A. LLC,* 668 F. App'x 795, 796 (9th Cir. 2016) ("messages whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements" for purposes of the TCPA); *MacKinnon v. Hof's Hut Restaurants*, No. 2:17-cv-01456-JAM-DB, 2017 WL 5754308 (E.D. Cal. Nov. 28, 2017) (no TCPA liability for text message confirming plaintiff's requested restaurant reservation and providing a link advertising the restaurant's specials).

Because the messages were not marketing or advertisements, only Plaintiff's prior express consent was required; prior express written consent was not required. 47 U.S.C. § 227(b)(1); 47 C.F.R. § 64.1200(a)(1); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1045 (9th Cir. 2017); *Baird v. Sabre Inc.*, 995 F.Supp.2d 1100, 1107 (C.D. Cal. 2014); *In re Rules & Regs Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7971 (Jul. 10, 2015). Plaintiff admits he provided prior express consent when he voluntarily provided his mobile number to the hostess. Compl. ¶ 20.

Defendants also contend that the text messages at issue were not sent using an automated telephone dialing system ("ATDS"). Plaintiff alleges he received the first text message upon the hostess entering his phone number into the waitlist system, and the second after the restaurant determined that his requested table was ready. Compl. ¶¶ 13-14, 20. But manually typing a phone number into the waitlist application to initiate a text message is the epitome of manual texting not covered by the TCPA. *See e.g., Luna v. Shac, LLC*, 122 F. Supp. 3d 936, 940 (N.D. Cal. 2015) (texting platform not an ATDS because "human intervention was involved in several stages of the process"); *Jenkins v. mGage, LLC*, 2016 WL 4263937, at *5 (N.D. Ga. Aug. 12, 2016) (platform not an ATDS where human intervention required to send the messages); *Arora v. Transworld Sys. Inc.*, No. 15-CV-4941, 2017 WL 3620742 at *3 (N.D. Ill. Aug. 23, 2017) (not an

ATDS where human intervention required to place call); *Schlusselberg v. Receivables Performance Mgmt., LLC*, No. 15-7572(FLW), 2017 WL 2812884 (D. N.J. Jun. 29, 2017) (not an ATDS because agent must manually click to initiate each call). Plaintiff further alleges that he received the second text message at each restaurant once his table was ready. Compl. ¶¶ 19, 26. The system did not and cannot automatically send text messages without human intervention.

Thus, the following legal issues are presented by this case:

    a) Whether the text messages at issue constitute advertising under the TCPA;

    b) Whether the text messages at issue were sent using an "automated telephone dialing system;"

    c) Whether Yelp "initiated" the text messages at issue;

    d) Whether Plaintiff consented to receive the text messages at issue;

    e) Whether Plaintiff can demonstrate that a class is ascertainable, and satisfy his burden under Rule 23 of establishing that this action may be maintained as a class action;

    f) Whether Defendant BWW and/or Blazin' Wings is vicariously liable for the text messages at issue.

**4. Motions**

PLAINTIFF: Plaintiff intends to file a motion for class certification after having an appropriate time to conduct discovery. Plaintiff may also file a motion for summary judgment after the completion of sufficient discovery.

DEFENDANTS: On January 16, 2018, Defendants filed their motions to dismiss the complaint [ECF Nos. 21, 23, and 24), and a motion to change venue [ECF No. 22]. Those motions have been fully briefed, and the Court heard argument on February 27, 2018 [ECF No. 40.] BWW may file a motion to stay this case pending the D.C. Circuit's decision in *ACA International* given one of the primary issues in this case on whether the system qualifies as an ATDS. Defendants may also file a motion for summary judgment after the completion of sufficient discovery.

/ /

5

Case No. 4:17-cv-07129-YGR

JOINT CASE MANAGEMENT STATEMENT

150646.00602/106703086v.1

### 5. Amendment of Pleadings

PLAINTIFF: Although Plaintiff presently does not anticipate making any amendments to the Complaint, discovery may reveal facts requiring amendment. For example, discovery may reveal that the messages were sent by an entity acting at Defendants' direction, instead of by Defendants directly. If that turns out to be the case, then Plaintiff may seek leave to amend in order to allege claims against Defendants' agents, as he believes those entities would be jointly and severally liable under the TCPA. *See*, *e.g.*, *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877–79 (9th Cir. 2014); *Roylance v. ALG Real Estate Servs., Inc.*, 2015 WL 1522244, at *13 (N.D. Cal. Mar. 16, 2015); *Cellco P'ship v. Plaza Resorts, Inc.*, 2013 WL 5436553, at *6 (S.D. Fla. Sept. 27, 2013) (citing cases). In order to give sufficient time to the parties to conduct the necessary discovery, Plaintiff proposes a deadline of July 3, 2018, for the filing of any stipulation or motion to amend the pleadings.

DEFENDANTS: Plaintiff intends to commence discovery immediately and prior to any decision on the pending motions, and represented during the meet and confer that he would amend his complaint within 60 days of the Court's order on Defendants' pending motions to dismiss. Accordingly, Defendants believe that Plaintiff should have 60 days after the Court's ruling on the motions to dismiss to amend his pleading.

### 6. Evidence preservation

Plaintiff and Defendants have reviewed the Guidelines for the Discovery of Electronically Stored Information, as well as the Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information. Plaintiff and Defendants confirm that they have met and conferred regarding reasonable and proportionate steps to be taken for the preservation of evidence relevant to the issues in this action. Plaintiff will propose a stipulated order regarding the discovery of electronically stored information.

### 7. Disclosures

The parties have agreed to exchange initial disclosures by March 19, 2018.

//

**8.     Discovery**

Neither party has served any formal discovery. The parties do not presently contemplate modification to the applicable discovery rules. As set forth in Section 17 below, Plaintiff proposes a deadline of November 2, 2018, for the filing of any class-certification motion, which should give sufficient time to engage in the discovery necessary for briefing certification issues.

PLAINTIFF: Plaintiff will seek discovery regarding the number of text messages that Defendants transmitted during the class period; the call logs maintained by Defendants or their agents reflecting the content of the text messages that were transmitted to Plaintiffs and class members, the telephone numbers to which Defendants attempted to deliver the messages, and the date and time that Defendants attempted to deliver the messages; contracts and communications between or among Defendants; policies, practices, and procedures for obtaining consent from Plaintiff and class members before sending text messages; and the equipment used to transmit text messages. Plaintiff also presently anticipates taking the deposition of Defendants' corporate representatives concerning their telemarketing system, call logs, consent protocols, and written discovery responses, as well as the deposition of Defendants' experts (if any).

DEFENDANTS: Defendants will seek discovery regarding Plaintiff's relationship with and prior visits to Buffalo Wild Wings restaurants; Plaintiff's experience with and utilization of apps or texting platforms, including the Nowait/Yelp apps; Plaintiff's texting history; Plaintiff's interaction with the hostesses and other employees at the restaurants, among other things. Defendants presently anticipate taking Plaintiff's deposition, as well as the deposition of Plaintiffs' experts (if any), and serving written discovery.

**9.     Class Actions**

PLAINTIFF:

Plaintiff seeks to certify the following classes under Fed. R. Civ. Pro. 23(b)(2) and (3):
**Yelp/Nowait Class:** All persons within the United States who, within the four years prior to the filing of the Complaint and continuing to the present, received a text message from Defendants, or any of them, sent by means of an automatic telephone dialing system to their cellular telephones containing a hyperlink that directs to a website prompting them to download the Yelp or Nowait apps.

7                    Case No. 4:17-cv-07129-YGR

JOINT CASE MANAGEMENT STATEMENT

150646.00602/106703086v.1

**BWW Class:** All persons within the United States who, within the four years prior to the filing of the Complaint and continuing to the present, received a text message from Defendants, or any of them, sent by means of an automatic telephone dialing system to their cellular telephones prompting them to download the BWW Blazin' Rewards app.

Plaintiff submits that the following TCPA-related questions are common to the classes in the sense that they need be decided only once for the class as a whole, not separately for each class member:

- Whether the text messages received by class members constitute telemarketing or advertising. Although thousands of persons may have received text messages during the class period, each of those messages likely falls into one of a discrete number of separate templates; to the extent that large groups of persons received messages all generated from the same underlying template, the Court need only look at the template itself to rule on the telemarketing/advertising issue. For example, Plaintiff received a text message that read substantially as follows: "BWW: Check your place in line: http://n0wa.it/a~R26Ph[.] While you wait download our Blazin Rewards app for points & free wings! Reply STOP to end msgs[.]" That same message may have been sent to thousands of separate recipients, so the Court need only look at that underlying template in order to rule on whether the messages contain an advertisement or constitute telemarketing.
- Whether the equipment or facility used to send the text messages is an automatic telephone dialing system. If the same equipment or facility was used to send all of the messages, the Court need only answer this question once.
- Whether the process that Defendants used for adding telephone numbers to a contact-list database included the use of a form setting forth all of the necessary disclosures under the prior-express-written-consent standard.

As set forth below, Plaintiff proposes filing his class-certification motion by November 2, 2018.

DEFENDANTS:

Defendants believe the following individual issues will preclude certification of a nationwide class:

- The context and circumstances of each putative class member's consent and interactions with restaurant staff;
- Whether and which putative class members already had the Yelp and/or Nowait app installed;
- The difference in messages between the two restaurant locations as alleged in the complaint; and
- The level of human intervention at the restaurant and provider levels.

Further, the classes as currently defined are too broad and include text messages sent by, and on behalf of, third parties not named as defendants in this action. In addition to commonality, typicality, and manageability issues, discovery may likely reveal defenses as to vicarious liability issues presented in this case, as well as Plaintiff and counsel's adequacy to pursue this case as a class action.

**10.  Related Cases**

Plaintiff and Defendants are not aware of any related cases or proceedings against Defendants that are pending before any court or administrative body.

**11.  Relief**

PLAINTIFF: Under the TCPA a plaintiff is entitled to recover either actual damages, on the one hand, or statutory damages of $500 for each improper text message, on the other hand. *See* 47 U.S.C. § 227(b)(3). Furthermore, if a defendant acted "willfully or knowingly" in violating the TCPA, damages may be trebled. *Id.* Here, Plaintiff seeks classwide, trebled statutory damages for Defendants' alleged TCPA violations. Since the total amount of classwide damages owing is a function of the total number of text messages received by the class, Plaintiff cannot yet estimate the total amount of classwide damages. Plaintiff, again, will request this information from Defendants in his first set of written discovery requests. Plaintiff also seeks injunctive relief prohibiting the offending conduct.

DEFENDANTS: Defendants deny that they have harmed Plaintiff or any member of the putative class, or that Plaintiff or any member of the putative class is entitled to the relief sought

in the Complaint or any relief whatsoever. Defendants do not currently seek relief in this action, but reserve all rights to seek attorneys' fees and costs, as allowable and appropriate.

### 12. Settlement and ADR

Plaintiff and Defendants have filed their respective ADR Certifications pursuant to ADR L.R. 3-5. The parties have also met and conferred regarding ADR and agree to participate in private mediation through JAMS by December 31, 2018. Plaintiff needs discovery along the lines contemplated above to properly assess liability and damages in advance of mediation.

### 13. Consent to Magistrate

Defendant Wingmen V, LLC and Plaintiff have filed Declinations to Proceed Before a Magistrate Judge. [ECF Nos. 13, 18.]

### 14. Other References

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

### 15. Narrowing of Issues

The parties are not currently aware of any issues that can be narrowed by agreement of the parties.

### 16. Expedited Trial Procedure

The parties do not believe that this case can be handled on an expedited basis with streamlined procedures. Plaintiff and Defendants agree that this action should not be handled under General Order No. 64 Attachment A.

### 17. Scheduling

Because the Court has not yet ruled on whether this case will proceed on a classwide basis, Plaintiff and Defendants believe that it is premature to set a firm trial schedule. Instead, they propose that a further scheduling conference be held after the Court has ruled on Plaintiff's class-certification motion, at which time the scope of the case will be clearer. As set forth above, Plaintiff proposes a deadline of November 1, 2018, for the filing of any class-certification motion. As set forth below, Defendants propose a deadline of January 4, 2019 for the filing of any class certification motion. Defendants believe this length of time is necessary and warranted given the

150646.00602/106703086v.1

number of defendants in this case.

| ACTION | PLAINTIFF's PROPOSAL | DEFENDANTS' PROPOSAL |
|---|---|---|
| Deadline for Plaintiff to propose any amendment to the pleadings | July 3, 2018 | 60 days from Order on Motions to Dismiss. |
| Expert-witness designation deadline for experts offered in support of, or in opposition to, class-certification motion | September 7, 2018 | September 7, 2018 |
| Rebuttal expert-witness designation deadline for experts offered in support of, or in opposition to, class certification motion | October 5, 2018 | October 12, 2018 |
| Plaintiff to file Motion for Class Certification | November 2, 2018 | November 9, 2018 |
| Defendants to file Opposition to Motion for Class Certification | December 3, 2018 | December 17, 2018 |
| Plaintiff's Reply | January 4, 2019 | December 31, 2018 |
| Hearing On Motion for Class Certification | January 22, 2019 | February 1, 2019 |
| Further Status Conference | | February 11, 2019 |

**18. Trial**

PLAINTIFF: Plaintiff has requested a jury trial with respect to claims that may be so adjudicated. If the case proceeds on a classwide basis, Plaintiff and Defendants estimate that the trial will last ten court days; if the case proceeds on an individual basis, they estimate that trial will last four court days.

**19. Disclosure of Interested Entities**

Pursuant to L.R. 3-15 Plaintiff and Defendants have filed their respective Certifications of Interested Entities or Persons. [ECF Nos. 2, 10, 16, and 17.] Plaintiff reaffirms that, other than the undersigned Plaintiffs' counsel, he has no interest to identify.

Pursuant to Civil L.R. 3-15, Yelp certifies that as of this date, other than the named parties, there is no interest to report.

Defendant Wingmen V, LLC reaffirms the following parties have an interest in the outcome of this litigation in addition to its undersigned counsel: Wingmen V, LLC, which is a wholly owned subsidiary of Bison Intermediate LLC. No publicly held corporation owns 10% or more of Bison Intermediate LLC's membership interests.

Counsel for defendants Buffalo Wild Wings, Inc. and Blazin' Wings, Inc. reaffirm their Disclosure Statement and Certification of Interested Parties. [ECF No. 10.]

**20. Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. Other Matters**

The parties are presently unaware of any other matters that may facilitate the just, speedy and inexpensive disposition of this matter.

//

//

//

//

//

//

//

//

//

150646.00602/106703086v.1

| | |
|---|---|
| Dated: March 12, 2018 | Respectfully submitted, |

COUNSELONE, PC

By: /s/ Justin Kachadoorian
   Anthony J. Orshansky
   Alexandria R. Kachadoorian
   Justin Kachadoorian

*Attorneys for Plaintiff Marche Meeks*

Manatt, Phelps & Phillips, LLP

By: /s/ Kristin E. Haule
   Kristin E. Haule

*Attorneys for Defendant Wingmen V LLC*

BLANK ROME LLP

By: /s/ Harrison Brown
   Ana Tagvoryan
   Safia G. Hussain
   Harrison Brown
*Attorneys for Defendants Buffalo Wild Wings, Inc. and Blazin' Wings, Inc.*

REED SMITH LLP

By: /s/ Ashley L. Shively
   Brian A. Sutherland
   Ashley L. Shively
*Attorneys for defendant Yelp Inc., for itself and as successor-in-interest to Nowait, Inc.*

## **SIGNATURE ATTESTATION**

I, Justin Kachadoorian, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

By:   /s/ Justin Kachadoorian
       Justin Kachadoorian

150646.00602/106703086v.1