**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| **MARCHE MEEKS,**<br>Plaintiff**,**<br>vs.<br>**BUFFALO WILD WINGS, INC., ET AL.,**<br>Defendants**.** | CASE NO. 17-cv-07129-YGR<br><br>**ORDER GRANTING YELP'S MOTION TO DISMISS; GRANTING WINGMEN'S VENUE TRANSFER MOTION**<br><br>Re: Dkt. Nos. 21, 22, 23, 24 |

Plaintiff Marche Meeks brings this putative class action against defendants Buffalo Wild Wings, Inc. ("BWW"), Blazin Wings, Inc. ("Blazin"), Yelp, Inc. ("Yelp"), Nowait, Inc. ("Nowait"), and Wingmen V, LLC ("Wingmen") (collectively, "defendants"), alleging (1) negligent and (2) knowing and/or willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Dkt. No. 1-2 ("Complaint").) Currently before the Court are three Rule 12(b)(6) motions filed by defendants, each of which seeks to dismiss both causes of action alleged in the complaint,[1] and Wingmen's motion to transfer venue pursuant to 28 U.S.C. section 1404(a) (Dkt. No. 22 ("Venue Transfer Motion")).

Having carefully considered the papers submitted, the pleadings in this action, the oral arguments held on February 27, 2018, and for the reasons set forth below, the Court **ORDERS** as follows: The Court **GRANTS WITH PREJUDICE** Yelp's motion to dismiss. Accordingly, for the

---

[1] Specifically, the motions before the Court are Yelp's motion to dismiss (Dkt. No. 21 ("Yelp's MTD")); BWW's and Blazin's motion to dismiss (Dkt. No. 23 ("BWW's & Blazin's MTD")); and Wingmen's motion to dismiss (Dkt. No. 24 ("Wingmen's MTD")). Yelp moves on behalf of itself and as successor-in-interest to Nowait. Thus, this Order primarily refers to Yelp and Nowait collectively as "Yelp."

Plaintiff alleges, and defendants do not dispute, that Blazin is a wholly-owned subsidiary of BWW and owner of the Buffalo Wild Wings restaurant located in Sherman Oaks, California, and that Wingmen is the owner of the Buffalo Wild Wings restaurant located in Chino, California. (*See* Complaint ¶¶ 13, 20; Wingmen's MTD at 1; BWW's & Blazin's MTD at 2.)

1 reasons stated on the record and in light of plaintiff's concession at oral argument, the Court
2 **GRANTS** Wingmen's motion to transfer venue. The Court thus **DECLINES** to rule on (i) BWW's
3 and Blazin's motion to dismiss, and (ii) Wingmen's motion to dismiss so that a properly venued
4 court may hear and decide those motions.

**I.   SUMMARY OF ALLEGATIONS**

Plaintiff alleges that he visited two Buffalo Wild Wings restaurants, one located in Sherman Oaks, California in or around July 2017, and the other located in Chino Hills, California on September 4, 2017. (Complaint ¶¶ 13, 20.) On both occasions, no tables were immediately available, and plaintiff provided his cellular phone number to the hostess upon arrival so that the hostess could notify him when his table was ready. (*Id*.) Shortly thereafter, plaintiff received a text message providing a link so that he could check his place in line. (*Id*. ¶¶ 14, 20.) Subsequently, on both occasions, plaintiff received another text message notifying him that his table was ready. (*Id*. ¶¶ 19, 26.)[2] Though similar, the initiating text messages sent to plaintiff in July and September were not identical.

The July 2017 text message read substantially as follows: "BWW: Check your place in line: http://n0wa.it/a~R26Ph[.] While you wait download our Blazin Rewards app for points and free wings! Reply STOP to end msgs[.]" (*Id*. ¶ 14 (alterations in original).) Plaintiff alleges, upon information and belief, that Buffalo Wild Wings customers using the Blazin Rewards app receive points for purchases made at Buffalo Wild Wings restaurants, which can be redeemed for food. (*Id*. ¶ 15.) The Blazin Rewards app also offers coupons and discounts to customers dining at Buffalo Wild Wings restaurants. (*Id*.)

Upon information and belief, plaintiff alleges that the hyperlink in the text message directed to a website maintained by defendant Nowait, which advertises Nowait's app. The advertisement read, "To view your place in line download the app. . . . With the Nowait app, you can get in line at this very restaurant (and thousands of others) from home, never needing to wait

---

[2] Plaintiff does not allege that the second text message informing him that his table was ready violates the TCPA. Accordingly, the focus of this Order is on the initiating text messages received at both restaurants.

United States District Court
Northern District of California

2

around in the lobby for dinner again!" (*Id*. ¶ 16 (alterations in original).)

The September 4, 2017 text message read substantially as follows: "BWW: Check your place in line: https://yelp.to/qTKq/ZzS6f9OK9F[.]  We will text you when your table is ready." (*Id*. ¶ 20 (alterations in original).)  Plaintiff alleges that the hyperlink directs to a website "imploring" customers to "Download the Yelp App" and advertising that "Buffalo Wild Wings is one of the 1000s of restaurants that use Yelp to manage their waitlists. . . . [W]ith Yelp on your phone, you can save time and join the waitlist online via app, rather than standing in line or calling the restaurant." (*Id*. ¶ 21 (alterations in original).)

Plaintiff alleges that the Yelp app advertises itself as a restaurant and business directory. The Yelp app advertisement allegedly states in part: "Yelp has over 100 million reviews of businesses worldwide and is available for iPhone, iPad, and Apple Watch.  Whether you're looking for a pizzeria that just opened or a coffee shop nearby, Yelp is your local guide to finding the perfect place to eat, shop, relax and play. . . .  Make reservations, pick up food and order for delivery, all from your phone." (*Id*. ¶ 22 (alterations in original).)[3]

Plaintiff seeks to represent two classes defined as follows:

> **Yelp/Nowait Class:**  All persons within the United States who, within the four years prior to the filing of this Complaint and continuing to the present, received a text message from Defendants, or any of them, sent by means of an automatic telephone dialing system to their cellular telephones containing a hyperlink that directs to a website prompting them to download the Yelp or Nowait apps.
>
> **BWW Class:**  All persons within the United States who, within the four years prior to the filing of this Complaint and continuing to the present, received a text message from Defendants, or any of them, sent by means of an automatic telephone dialing system to their cellular telephones prompting them to download the BWW Blazin' Rewards app.

(Complaint ¶ 40.)  The complaint asserts two causes of action under the TCPA against all defendants:  one for negligent violations of the TCPA, and one for knowing and/or willful violations of the TCPA. (*Id*. ¶¶ 56–62.)  Plaintiff seeks statutory damages for each alleged

---

[3] According to plaintiff, Yelp partnered with Nowait in 2016 and acquired Nowait in 2017. (Complaint ¶ 27; *see also* Yelp's MTD at 1.)

1  negligent and knowing/willful violation, as well as injunctive relief prohibiting future conduct,
2  punitive damages, and interest.  (*Id*. at pp. 11–12.)

## II.  LEGAL FRAMEWORK

### A.  Legal Standard on Motion to Dismiss

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."  *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor are courts required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B.  TCPA

The TCPA makes it unlawful for "any person . . . to make any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system ["ATDS"] . . . to any telephone number assigned to a . . . cellular telephone service . . . ."  47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) ("No person or entity may . . . initiate any telephone call . . . .").  The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  The Ninth Circuit has held that a text message constitutes a "call" for purposes of the TCPA.  *Satterfield v. Simon &*

4

*Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2012).

Further, the Court acknowledges that it "is bound by the [Federal Communication Commission's ('FCC')] interpretations of the TCPA, unless those interpretations are invalidated by a court of appeals." *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015); *cf. Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("Because the TCPA does not define the phrase 'prior express consent,' we turn to the FCC's Orders and Rulings, which interpret and clarify the term.").

### III. YELP'S MOTION TO DISMISS

Relevant here, Yelp argues that plaintiff has failed to establish Yelp's TCPA liability under either a direct liability theory or a vicarious liability theory.[4] The Court addresses each argument in turn.

#### A. Whether Yelp is Directly Liable Under the TCPA

Yelp contends that plaintiff has failed to plead sufficient facts to establish that Yelp made or initiated the text messages at issue. In particular, in light of the FCC's guidance in a 2015 order, Yelp argues that it does not qualify as having made a call under the TCPA and therefore cannot be liable for any TCPA violations. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980–84 (2015) (hereinafter, "2015 TCPA Declaratory Ruling"), *set aside in part by ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. Mar. 16, 2018). The Court agrees.

Neither the TCPA nor its implementing regulations define the terms "make" or "initiate," nor do they establish specific factors to be considered in determining who makes or initiates a call. The FCC has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In the Matter of the Joint Petition filed by Dish*

---

[4] Yelp additionally argues, as do the other defendants in their respective motions to dismiss, that the text messages at issue were not advertisements or telemarketing and fell within the scope of plaintiff's express consent. However, the Court need not address this argument for purposes of deciding whether plaintiff has sufficiently stated a TCPA claim against Yelp.

*Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013).  That is, to "initiate" suggests some "direct connection between a person or entity and the making of a call." *Id*.

Thus, in considering whether entities that provide software applications or platforms that facilitate calling are considered the makers or initiators of hosted calls for TCPA purposes, the FCC ultimately concluded: "[W]e look to the totality of the facts and circumstances surrounding the placing of a particular call to determine:  1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA."  2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7980 ¶ 30.  Applying this standard, the FCC determined that the maker of an app called TextMe did not make or initiate calls when its app users used the TextMe app to send invitational text messages.  *Id*. at 7983 ¶ 36.  Users could use the app to invite their friends to use the TextMe platform, which allowed users to send and receive text messages within the United States free of charge if both parties were app users.  *Id*.  If a user chose to send an "invitational text message," the platform would then send the text message to the number(s) provided by the user via his or her phone's address book.  *Id*.  The FCC reasoned that it was the app *user*, and not TextMe, who initiated the text messages given the "affirmative choices by the app user."  *Id*. at 7984 ¶ 37.  Namely, the app user decided:  (1) whether to send an invitational message; (2) to whom to send the message; and (3) when the message was sent.  *Id*.[5]  While the FCC noted that "TexMe's control of the content of the invitational message is a reason for concern," this consideration did not outweigh the app user's control over whether, when, and to whom to send an invitational message.  *Id*.

Here, plaintiff has not alleged any facts that would establish that Yelp initiated the text messages sent to plaintiff.  Rather, plaintiff's allegations indicate that the app users, *i.e.*, the Buffalo Wild Wings restaurants, initiated the text messages because they, and not Yelp, decided whether, when, and to whom to send the text messages.  Specifically, the complaint shows that the

---

[5] In its discussion, the FCC noted that *who controls the content* of a text message is another key factor for determining who initiated the text message.  2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7984 ¶ 37; *see also id.* at 7981 ¶ 32.

1   restaurants plaintiff visited, not Yelp, decided *whether* to send a text message to plaintiff.  The
2   "hostess," not Yelp, obtained plaintiff's cellular phone number so that he could "Check [his] place
3   in line" and to notify plaintiff that his "table was ready."  (Complaint ¶¶ 13–14, 19–20, 26.)  The
4   complaint also establishes that the restaurants decided *when* to send the text messages to plaintiff
5   because he received them "[s]hortly" after the hostess took down his number (*id*. ¶14; *see also id*.
6   ¶ 20 (plaintiff received the text message "soon thereafter")) and when his "table was ready" (*id*. ¶¶
7   19, 26).  That is, the complaint indicates that the timing of the text messages was linked to
8   information in the restaurants', not Yelp's, possession.  Moreover, the complaint shows that the
9   restaurants decided to *whom* to send the text messages, that is, to patrons who provided their
10  cellular phone numbers upon arriving at the restaurant.  (*Id*. ¶¶ 13–14, 19–20, 26.)[6]

11  Moreover, plaintiff's complaint contains affirmative allegations confirming that Yelp was
12  *not* the maker or initiator of the text messages.  Specifically, plaintiff alleges that, "*BWW*
13  coordinates and implements marketing, advertising, and operations management at restaurant
14  locations, including at subsidiaries and franchisees such as Blazin Wings and Wingmen." (*Id*. ¶
15  28 (emphasis supplied).)  With respect to "BWW's promotion of the Blazin' Rewards app and the
16  Nowait and Yelp apps," plaintiff adds, "*BWW* exercises control over or has the right to control
17  advertisements sent to Plaintiff and other members of the putative class." (*Id*. ¶ 29 (emphasis
18  supplied).)[7]  Moreover, plaintiff alleges that "*BWW restaurants* throughout the United States sent
19  similar text messages as those described above to customers."  (*Id*. ¶ 30 (emphasis supplied).)

20  Plaintiff's reliance on *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855 (W.D.
21  Wash. July 12, 2017) to argue that the Court should deny Yelp's motion to dismiss because it was
22  an initiator of the text messages sent to plaintiff is unavailing.  There, the motion to dismiss

---

[6] District courts within the Ninth Circuit have similarly dismissed TCPA claims against operators of mobile apps where the app *users* decided whether, when, and to whom to send the text messages at issue in those cases.  *See, e.g., Cour v. Life 360, Inc.*, No. 16-cv-00805, 2016 WL 4039279, at *4 (N.D. Cal. July 28, 2016); *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750, at *5 (N.D. Cal. Sept. 9, 2015); *see also Wright v. Lyft, Inc.*, No. 2:14-CV-00421 MJP, 2016 WL 7971290, at *3 (W.D. Wash. Apr. 15, 2016).

[7] The Court interprets this allegation as a reference to *control over the content* of the text messages at issue.

7

concerned a cloud-based service provider with more involvement in developing the offending text message than is alleged here. Specifically, applying the FCC's "fact-based analysis" from its 2015 ruling, the court noted:

> As an initial matter, plaintiff alleges that Twilio's system was programmed to dial his number and send the offending text message. With regards to message content, plaintiff alleges that Twilio creates . . . messages for its customers . . . and reassembles content provided by its customers to make it more palatable to carriers. . . . Plaintiff alleges that Twilio determines what number a message will be sent from in order to prevent messages from being filtered or rejected and to mask the source of the calls it initiates. . . . Plaintiff alleges that Twilio chooses the order and timing of messages to ensure that the rate at which they are received by the carrier stays below the carrier's spam filter threshold. . . . Finally, plaintiff alleges that Twilio knows that its platform technology can be used to automatically send tens of thousands of text message that violate the TCPA, has bragged that its customers have been able to spam mobile phones using its platform, and has failed to require its customers to certify that they are complying with the TCPA.

*Id*. at *4 (internal citations omitted). While plaintiff alleges that the restaurants use Yelp's "platform" to send the offending text messages (Complaint ¶ 33), he does not allege that Yelp decided whether, when, or to whom to send the messages. Rather, his allegations regarding Yelp pertain to its purported business model and the general advertising and analytics services Yelp provides to restaurants. (*Id*. ¶¶ 17–18, 23–25.)[8] Thus, unlike in *Wick*, plaintiff's allegations fail to establish that Yelp was an "active participant in developing the message[s] the recipient ultimately receive[d], controlling the initiation of the message." *Wick*, 2017 WL 296485, at *4.[9]

### B. Whether Yelp is Vicariously Liable Under the TCPA

With respect to plaintiff's argument in his opposition that Yelp could in any event be found vicariously liable for BWW's sending of the text messages, the Court agrees with Yelp that

---

[8] In his opposition to Yelp's motion to dismiss, plaintiff argues that Yelp knew that restaurants would use its software to send text messages to their customers. (*See* Dkt. No. 30 at 7 ("Opposition to Yelp's MTD").) However, this assertion is irrelevant to whether Yelp decided *when* or *to whom* to send the text messages. Moreover, plaintiff's opposition does not appear to dispute that the restaurants decided *whether* to send the text messages.

[9] Of note, the court in *Wick* actually *granted* Twilio's motion to dismiss, albeit on a separate ground.

8

plaintiff fails to allege facts to support a theory of vicarious liability. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship . . . between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016). "The existence of an agency relationship generally presents a question of fact." *Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276, 1283 (9th Cir. 1988), *rev'd in part on other grounds*, *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999). That, however, does not imply that mere assertions of an agency relationship will survive a motion to dismiss under Rule 12(b)(6). Though "the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014) (citing *Iqbal*, 556 U.S. at 696).

Under traditional agency principles, "[a]n entity may be liable for actions it did not itself take when the unlawful acts were performed by an agent of the entity." *Henderson v. United Student Aid Funds, Inc.*, No. 13cv1845 JLS (BLM), 2017 WL 766548, at *6 (S.D. Cal. Feb. 28, 2017). An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 (Am. Law. Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" *Id.* (quoting Restatement (Third) of Agency § 1.01 cmt. c). "Agency means more than mere passive permission; it involves request, instruction, or command." *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931).

Here, plaintiff fails to allege a traditional agency relationship between Yelp and BWW. He has not alleged that Yelp had any control over BWW with respect to sending the text messages, nor that BWW acted in any way on Yelp's behalf. Indeed, as discussed above, the complaint shows that the *restaurants* controlled whether, when, and to whom to send the text messages,

along with their content. Thus, the complaint fails to sufficiently allege that Yelp is vicariously liable for the allegedly unlawful text messages. *See Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 WL 2972447, at *3 (S.D. Cal. July 12, 2017) ("[I]n order to allege a traditional agency relationship, Plaintiff would have to allege Defendant 'controlled or had the right to control [the entity responsible for the text message] and, more specifically, the manner and means of the text message campaign they conducted.'") (quoting *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014)).

### C. Leave to Amend

Plaintiff seeks leave to amend should the Court grant Yelp's motion to dismiss. (Opposition to Yelp's MTD at 21.) However, a district court may deny leave to amend where a plaintiff could not amend the complaint to state a viable claim "without contradicting any of the allegations in the original complaint." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990); *see also Cohen v. Berkley Nat'l Ins. Co.*, No. 2:17-cv-00057-GMN-GWF, 2017 WL 3925418, at *4 (D. Nev. Sept. 6, 2017) ("To allow Plaintiffs to amend their Complaint to allege facts that are in direct contradiction to the facts alleged . . . would be futile."); *MacKinnon v. Hof's Hut Restaurants, Inc.*, No. 2:17-cv-01456-JAM-DB, 2017 WL 5754308, at *3 (E.D. Cal. Nov. 28, 2017) (denying leave to amend complaint in TCPA case because amendment would be futile). The complaint affirmatively establishes that Yelp did not initiate the text messages at issue and that no entity acted in any way on its behalf. Because plaintiff cannot sustain a claim against Yelp without contradicting his existing allegations, the Court **DENIES** plaintiff's request.

### IV. CONCLUSION

In light of the foregoing, the Court **GRANTS WITH PREJUDICE** Yelp's motion to dismiss.

At the hearing on the instant motions, the Court weighed the relevant public and private interest factors to determine whether a transfer of the case to the Central District of California would be more convenient to the parties and the witnesses and would promote the interests of justice. *See Sierra Club v. U.S. Dep't of State*, No. C 09-4086-SI, 2009 WL 3112102, at *2 (N.D. Cal. Sept. 23, 2009) (listing factors). The Court concluded that it would deny Wingmen's venue transfer motion *unless* it were ultimately to dismiss Yelp from the case, and plaintiff conceded that

this course of action would be appropriate.  Accordingly, the Court also **GRANTS** Wingmen's motion to transfer venue to the Central District of California.

The Court **DECLINES** to rule on (i) BWW's and Blazin's motion to dismiss, and (ii) Wingmen's motion to dismiss so that the judge presiding over the case can hear and decide those motions.[10]

The Clerk is directed to transfer the file in this case to the Central District of California.

This Order terminates Docket Numbers 21, 22, 23, & 24.

**IT IS SO ORDERED.**

Dated:  March 28, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[10] Because the D.C. Circuit's recent decision in *ACA International v. FCC*, No. 15-1211 (D.C. Cir. Mar. 16, 2018) concerns matters beyond the scope of this Order, the Court further **DENIES** defendants BWW's, Blazin's, and Wingmen's joint request for leave to file a supplemental brief regarding the decision's impact on defendants' motions to dismiss.  (Dkt. No. 46.)